IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

THE KAY COMPANY, LLC,
WILLIAM CATHER, Trustee
of Diana Goff Cather Trusts,
and JAMES E. HAMRIC III,
and all other persons and
entities similarly situated,

          Plaintiffs,

v.                                           Case No. 1:13-CV-151
                                           Honorable John Preston Bailey

EQT PRODUCTION COMPANY,
a Pennsylvania corporation;
et al.
                    Defendants.

**PLAINTIFFS' MOTION *IN LIMINE* TO PROHIBIT
DEFENDANTS FROM RELYING UPON *LEGGETT 2* AS
OPPOSED TO W.VA.CODE § 22-6-8(e), AS AMENDED BY SENATE BILL 360**

       Plaintiffs respectfully submit the following motion *in limine* to prohibit Defendants from

relying upon *Leggett v. EQT Production Co.*, 239 W.Va. 264, 274-76, 800 S.E.2d 850, 860-62

(2017) (*Leggett 2*), as opposed to W.Va. Code § 22-6-8(e), as amended by Senate Bill 360 which

became effective on May 31, 2018.

       A review of Defendants' motions for summary judgment and responses to Plaintiffs'

motion for summary judgment establishes that Defendants are continuing to rely upon *Leggett 2*

as being a controlling precedent in this case as to those 1/8th royalty leases which have been

converted from flat-rate leases pursuant to W.Va. Code § 22-6-8(e).  However, Defendants fail to

acknowledge that the West Virginia Legislature's intent concerning W.Va. Code § 22-6-8(e) was

recently clarified by Senate Bill 360, which amendment was effective on May 31, 2018, in

response to invitations made by the West Virginia Supreme Court of Appeals in *Leggett 2*.

Plaintiffs respectfully submit that W.Va. Code § 22-6-8(e), as amended by Senate Bill 360, effective on May 31, 2018, applies to this case because, as will be discussed *infra*, amendments which clarify existing law, correct a misunderstanding of the law, or overrule a wrongly decided case do not violate the general rule against retroactive application of a statute. Moreover, even if applying the amended statute to this case could reasonably be construed as involving a retroactive application, such application would not be prohibited because the Contract Clauses of the United States and West Virginia Constitutions would not be violated by such amendment. Additionally, in this regard, the Legislature has noted in W.Va. Code § 22-6-8(a)(4) its intent that its public policy be applied to the fullest extent constitutionally permitted by the Contract Clauses.  Obviously, a need to mention the Contract Clauses only arises when a retroactive application is sought.

### Relevant Procedural History of *Leggett 1*, *Leggett 2*, and Senate Bill 360

On February 10, 2016, the United States District Court for the Northern District of West Virginia issued an Order (ECF Doc. No. 187) certifying questions of law to the West Virginia Supreme Court of Appeals in the case of *Leggett, et al. v. EQT Production Company, et al.*, Civil Action No. 1:13CV4 (S.D.W.Va.) (Stamp, J.).  Certified Question No. 1 provided:

> Does Tawney v. Columbia Natural Resources, L.L.C., 219 W. Va. 266, 633 S.E.2d 22 (2006), which was decided after the enactment of West Virginia Code § 22-6-8, have any effect upon the Court's decision as to whether a lessee of a flat-rate lease, converted pursuant to West Virginia Code § 22-6-8, may deduct post-production expenses from his lessor's royalty, particularly with respect to the language of "1/8 at the wellhead" found in West Virginia Code § 22-6-8(e)?

(ECF Doc. No. 187, at 4.)

In its initial opinion addressing Certified Question 1, after discussing its prior precedents, the relevant statutory language, and the applicable rules of statutory construction, the West

Virginia Supreme Court of Appeals, in a 3-2 majority opinion authored by Justice Benjamin, held:

> Through our discussion, we have demonstrated that *Tawney* and our earlier precedents, particularly *Wellman*, indeed inform the analysis of the issue, but the question as formulated, we believe, imprecisely addresses the particular dispute between the parties.
>
> We therefore reformulate the question, in accordance with the discretion afforded us by West Virginia Code § 51-1A-4, as follows:
>
> Whenever the lessee-owner of a working interest in an oil or gas well must comply with West Virginia Code § 22-6-8(e) by tendering to the lessor-owner of the oil or gas in place a royalty not less than one-eighth of the total amount paid to or received by or allowed to the lessee, does the statute require in addition that the lessee not deduct from that amount any expenses that have been incurred in gathering, transporting, or treating the oil or gas after it has been initially extracted, any sums attributable to a loss or beneficial use of volume beyond that initially measured, or any other costs that may be characterized as post-production?
>
> We answer that question in the affirmative.

*Leggett v. EQT Production Co.*, No. 16-0136, Slip Op. at p. 16 (W.Va. Nov. 17, 2016) (*Leggett I*).[1]

The Court set forth the following relevant Syllabus Points:

> 2.       Whenever West Virginia Code § 22-6-8(e) (1994) requires the filing of an affidavit as a prerequisite to obtaining an oil or gas drilling or reworking permit, the averment in the affidavit that the landowner shall receive a royalty of not less than one-eighth of the amount realized by the holder of the working interest "at the wellhead" means that the royalty payment is not to be diluted by costs and losses incurred downstream from the wellhead before a marketable product is rendered.
>
> 3.       Whenever the lessee-owner of a working interest in an oil or gas well must comply with West Virginia Code § 22-6-8(e) by tendering to the lessor-owner of the oil or gas in place a royalty not less than one-eighth of the total amount paid to or received by or allowed to the lessee, the statute requires in addition that the lessee not deduct from that amount any expenses that have

---

[1] The Court declined to address a second certified question because it found that it was not properly before the Court. *Id.*

been incurred in gathering, transporting, or treating the oil or gas after it has been initially extracted, any sums attributable to a loss or beneficial use of volume beyond that initially measured, or any other costs that may be characterized as post-production.

Syl. Pts. 2 & 3, *Leggett 1*, *id.*

In reaching its holdings, the Court also explained that lessees would not be able to reduce the royalty owed to lessors through the use of affiliate sales.  The Court explained:

> The remedial application of the flat-rate statute together with the implied covenant to market recognized in *Wellman* and *Tawney* demand that the statutorily mandated one-eighth proportionate royalty paid to the lessor-owners of oil and gas interests, here the landowners, remain supremely constant, immune from the facile downward manipulation of such a royalty by working interest holders, here EQT, and their associates.  *Accord, W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F. Supp. 2d 790, 804 (S.D. W. Va. 2014) ("The defendants cannot calculate royalties based on a sale between subsidiaries at the wellhead when the defendants later sell the gas in the open market at a higher price.  Otherwise, gas producers could always reduce royalties by spinning off portions of their business and making nominal sales at the wellhead.").  In a properly functioning royalty system, lessor-owners of oil and gas interests are accurately cast as suppliers of raw materials necessary to develop a finished product.  For such raw materials, such lessor-owners are paid a one-eighth proportionate price accounted for as a cost of goods sold.  Lessor-owners do not sign on to be the lessee's business partner or a participant in a joint venture with the lessee, and they should not be compelled to assume risks or expenses that would typically be associated with that sort of role.

*Leggett 1*, Slip Op. at p. 15.

Subsequently, *Leggett 1* was withdrawn upon rehearing which was granted following the replacement of Justice Benjamin on the Court by Justice Walker as a result of the November 2016 elections.  A majority of the re-constituted Court determined that its decisions in *Tawney* and *Wellman* were not relevant to a determination of similar issues under W.Va.Code § 22-6-8 (1994), because different canons of construction exist between contracts and statutes and in its opinion the implied covenant to market does not apply to leases converted under the statute.

*Leggett v. EQT Production Co.*, 239 W.Va. 264, 274-76, 800 S.E.2d 850, 860-62 (2017) (*Leggett 2*).

The Court then reformulated Certified Question 1 into two questions and provided its answers:

> Are royalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) subject to pro-rata deduction or allocation of post-production expenses by the lessee?
>
> May an oil or gas lessee utilize the "net-back" or "work-back" method to calculate royalties owed to a lessor pursuant to a lease governed by West Virginia Code § 22-6-8?
>
> We answer both of the reformulated questions in the affirmative.

*Leggett 2*, 239 W.Va. at 281, 800 S.E.2d at 867.

The Court then set forth the following Syllabus Point:

> Royalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) may be subject to pro-rata deduction or allocation of all reasonable post-production expenses actually incurred by the lessee. Therefore, an oil or gas lessee may utilize the "net-back" or "work-back" method to calculate royalties owed to a lessor pursuant to a lease governed by West Virginia Code § 22-6-8(e). The reasonableness of the post-production expenses is a question for the fact-finder.

Syl. Pt. 8, *id.*

The Court's majority, however, ended its opinion recognizing the inconsistencies created by its interpretation of § 22-6-8(e) concerning 1/8 royalty leases converted from flat-rate leases thereunder versus those 1/8 royalty leases privately negotiated and invited the West Virginia Legislature to clarify its intent on the subject.

> Nevertheless, this Court recognizes the inherent tension between holders of leases subject to our interpretation of West Virginia Code § 22-6-8 and those freely-negotiated leases which remain subject to the holdings of *Wellman* and *Tawney*. We therefore implore the Legislature to resolve the tensions as it sees fit inasmuch as this Court may only act within the confines of our constitutional charge.

*Leggett 2*, 239 W.Va. at 283, 800 S.E.2d at 869 (footnote omitted).

Similarly, Justice Workman, who had been part of the majority in *Leggett 1*, but who also concurred with the new majority in *Leggett 2*, also requested that the Legislature clarify its intention in her separate concurring opinion:

> What both the foregoing and the majority's opinion underscores is the necessity of the Legislature to address these policy-laden issues and declare, by statute, the will of the State's citizenry in this regard. . . .  Where the Legislature's inaction in the face of such significant changes in the industry leaves this Court to intuit its intentions and/or retrofit outdated statutory language to evolving factual scenarios, the will of the people is improperly disregarded.

*Leggett 2*, 239 W.Va. at 285, 800 S.E.2d at 871.

In the very next regular legislative session, in January, 2018, Senate Bill 360 was introduced in the Senate Committee on Energy, Industry, and Mining with the following note as to its purpose:  "NOTE:  The purpose of this bill is to clarify the royalty owed to a royalty owner in an oil and gas lease." http://www.wvlegislature.gov/Bill_Status/bills_text.cfm?billdoc=SB360%20INTR.htm&yr=2018&sesstype=RS&i=360   The Bill was discussed before the Senate Committee on Energy, Industry, and Mining on January 25, 2018, http://sg001-harmony.sliq.net/00289/Harmony/en/PowerBrowser/PowerBrowserV2/20180127/-1/18767 and on February 6, 2018, before being approved and voted out to the Senate Judiciary Committee before being sent to the full Senate.  http://sg001-harmony.sliq.net/00289/Harmony/en/PowerBrowser/PowerBrowserV2/20180210/-1/19781.  The bill was discussed before the Senate Judiciary Committee on February 22, 2018, with its discussion beginning at 8:06 pm.  http://sg001-harmony.sliq.net/00289/Harmony/en/PowerBrowser/PowerBrowserV2/20180224/-1/20850.

While demonstrating a lack of understanding of the scope and limitations of the Contract Clause[2] and some confusion as to whether subsection (e) was intended to be prospective or retroactive, these discussions clearly support that the intention of the amendment found in Senate Bill 360 was to clarify the Legislature's intention in response to the inconsistencies between *Leggett 1* and *Leggett 2* and the express invitation for legislative clarification set forth in *Leggett 2*.

Senate Bill 360 was adopted, without any substantive changes, by the full Senate and House and signed into law by the Governor, becoming effective on May 31, 2018.  As amended by Senate Bill 360, W.Va. Code § 22-6-8(e) now provides:

> To avoid the permit prohibition of § 22-6-8(d) of this code, the applicant may file with such application an affidavit which certifies that the affiant is authorized by the owner of the working interest in the well to state that **it shall tender to the owner of the oil or gas in place <u>not less than one eighth of the gross proceeds, free from any deductions for post-production expenses, received at the first point of sale to an unaffiliated third-party purchaser in an arm's length transaction for the oil or gas so extracted, produced or marketed</u> before deducting the amount to be paid to or set aside for the owner of the oil or gas in place, on all such oil or gas to be extracted, produced or marketed from the well.**  If such affidavit be filed with such application, then such application for permit shall be treated as if such lease or leases or other continuing contract or contracts comply with the provisions of this section.

W.Va. Code § 22-6-8(e) (2018) (emphases added).

The clarification achieved by this amendment conclusively demonstrates that the Plaintiffs' position and the holding of the West Virginia Supreme Court of Appeals in *Leggett 1* was and is consistent with the intention of the West Virginia Legislature; thereby, effectively overruling *Leggett 2*.  Plaintiffs submit that W.Va. Code § 22-6-8(e), as amended by Senate Bill 360 and effective on May 31, 2018, applies to this case because, as will be discussed *infra*,

---

[2] As will be discussed in greater detail *infra*, the constitutional prohibition against enacting laws that impair existing contract rights is not absolute.

amendments which clarify existing law, correct a misunderstanding, or overrule a wrongly

decided case do not violate the general rule against retroactive application of a statute.

### Statutory Amendments Designed to Clarify Existing Law
### Do Not Violate the General Rule Against Retroactive Legislation

The United States Court of Appeals for the Fourth Circuit has held:

> We note at the outset that when an amendment alters, even "significantly alters," the original statutory language, this does "not necessarily" indicate that the amendment institutes a change in the law. *Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir.1999) (internal quotation marks and citation omitted); *accord Wesson v. United States,* 48 F.3d 894, 901 (5th Cir.1995) (noting that "an amendment to a statute does not necessarily indicate that the previous version was the opposite of the amended version"). Certainly, Congress *may amend a statute to establish new law, but it also may enact an amendment "to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases." United States v. Sepulveda,* 115 F.3d 882, 885 n. 5 (11th Cir.1997) (internal quotation marks and citation omitted). As we have explained, a "change[ ] in statutory language need not *ipso facto* constitute a change in meaning or effect. *Statutes may be passed purely to make what was intended all along even more unmistakably clear." United States v. Montgomery County,* 761 F.2d 998, 1003 (4th Cir.1985).

> In determining whether an amendment clarifies or changes an existing law, a court, of course, looks to statements of intent made by the legislature that enacted the amendment. *See, e.g., Piamba Cortes,* 177 F.3d at 1284 ("[C]ourts may rely upon a declaration by the enacting body that its intent is to clarify [a] prior enactment."); *Liquilux,* 979 F.2d at 890 (using the "legislature's expression of what it understood itself to be doing" to determine whether an amendment is a clarification). . . .

*Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (emphases added). *Accord, e.g., Whiting*

*v. The Johns Hopkins Hosp.*, 416 Fed. Appx. 312, at *2 (4th Cir. 2011); *Levy v. Sterling Holding*

*Co., LLC*, 544 F.3d 493, 506-07 (3d Cir. 2008) ("we do not take the fact that an amendment

conflicts with a judicial interpretation of the pre-amendment law to mean that the amendment is

a substantive change and not just a clarification.  As we explained . . ., 'one could posit that quite

the opposite was the case—that the new language was fashioned to clarify the ambiguity made

apparent by the caselaw.'" (citation omitted)); *First Nat. Bank of Chicago v. Standard Bank &*

8

*Trust*, 172 F.3d 472, 478-80 (7th Cir. 1999) ("This is so because a clarification of an unsettled or confusing area of the law 'does not change the law, but restates what the law . . . is and has always been:  "it is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand."'" (citations omitted)); *In re S.B.*, 32 Cal.4th 1287, 1296, 90 P.3d 746, 751, 13 Cal. Rptr.3d 786, 792 (2004) ("Application of a statute that clarifies existing law is not retrospective, because the true meaning of the statute has not changed."); *Carpenter v. Butler*, 32 Wash.2d 371, 379, 201 P.2d 704, 709 (1949) ("when the legislature acts to construe an ambiguity in a preexisting statute, it is not legislating retroactively").

As more fully explained by the Eleventh Circuit in *Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272 (11th Cir.1999),

> As we explain, if the amendment clarifies prior law rather than changing it, no concerns about retroactive application arise and the amendment is applied to the present proceeding as an accurate restatement of prior law.
>
> At first, it seems intuitively appealing to conclude that, because the new language significantly alters the text of the original Convention, the original Convention's language may be presumed to have meant the opposite. . . . This intuition runs contrary to our precedent, however, which holds that *an amendment containing new language may be intended "to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases.* Thus, an amendment ... does not necessarily indicate that the unamended statute meant the opposite" of the language contained in the amendment. *United States v. Sepulveda,* 115 F.3d 882, 885 n. 5 (11th Cir.1997).
>
> *Moreover, concerns about retroactive application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to clarify relevant law rather than effect a substantive change in the law. See Beverly Community Hosp. Ass'n v. Belshe,* 132 F.3d 1259, 1265 (9th Cir.1997), *cert. denied,* 525 U.S. 928, 119 S.Ct. 334, 142 L.Ed.2d 276 (1998); *Liquilux Gas Corp. v. Martin Gas Sales,* 979 F.2d 887, 890 (1st Cir.1992); *Boddie v. American Broadcasting Cos.,* 881 F.2d 267, 269 (6th Cir.1989); *cf. Tsui Yuan Tseng,* 525 U.S. at ——, 119 S.Ct. at 667–68 . . . In effect, the court applies the law as set forth in the amendment to the present proceeding because the amendment accurately restates the prior law. *See Liquilux,* 979 F.2d at 890 ("Clarification,

effective *ab initio,* is a well recognized principle.").

   Several factors are relevant when determining if an amendment clarifies, rather than effects a substantive change to, prior law. *A significant factor is whether a conflict or ambiguity existed with respect to the interpretation of the relevant provision when the amendment was enacted. If such an ambiguity existed, courts view this as an indication that a subsequent amendment is intended to clarify, rather than change, the existing law. See Liquilux,* 979 F.2d at 890. Second, courts may rely upon a declaration by the enacting body that its intent is to clarify the prior enactment. *See id.* Courts should examine such declarations carefully, however, especially if the declarations are found in the amendment's legislative history rather than the text of the amendment itself. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980). As a general rule, "[a] mere statement in a conference report of [subsequent] legislation as to what the Committee believes an earlier statute meant is obviously less weighty" than a statement in the amendment itself. *Id.; see also Pennsylvania Med. Soc'y v. Snider,* 29 F.3d 886, 900 (3d Cir.1994) . . . . *Declarations in the subsequent legislative history nonetheless may be relevant to this analysis,* especially if the legislative history is consistent with a reasonable interpretation of the prior enactment and its legislative history. *See Sykes v. Columbus & Greenville Ry.,* 117 F.3d 287, 293–94 (5th Cir.1997) . . . .

*Piamba Cortes v. American Airlines, Inc.*, 177 F.3d at 1283-84 (emphases added).

   The court in *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp.2d 582 (S.D.N.Y. 2012) acknowledged:

   *Notwithstanding th[e] presumption [against retroactive legislation], several Courts of Appeals have held that when an amendment merely clarifies existing law, rather than effecting a substantive change to the law, then retroactivity concerns do not come into play. See Levy v. Sterling Holding Co., LLC,* 544 F.3d 493, 506–08 (3d Cir.2008) (citing decisions "finding retroactivity to be a non-issue with respect to new laws that clarify existing law"); *Cookeville Reg'l Med. Ctr. v. Leavitt,* 531 F.3d 844, 849 (D.C.Cir.2008) (finding "no problem of retroactivity" where new statute "did not retroactively alter settled law," but "simply clarified an ambiguity in the existing legislation"); *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004); *ABKCO Music, Inc. v. LaVere,* 217 F.3d 684, 689 (9th Cir.2000) ("Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively." (quotation marks and citation omitted)); *Piamba Cortes v. Am. Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir.1999) ("[C]oncerns about retroactive application are not implicated when an amendment ... is deemed to clarify relevant law rather than effect a substantive change in the law."); *Pope v. Shalala,* 998 F.2d 473, 483 (7th Cir.1993) ("A rule simply clarifying an unsettled or confusing area of the law ...

does not change the law, but restates what the law according to the agency is and has always been: 'It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.' " (quoting *Manhattan Gen. Equip. Co. v. Comm'r,* 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936))), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561, 563 (7th Cir.1999). "In effect, the court applies the law as set forth in the amendment to the present proceeding because the amendment accurately restates the prior law." *Piamba Cortes,* 177 F.3d at 1284.

As these decisions have recognized, *"there is no bright-line test" for determining whether an amendment clarifies existing law. Levy, 544 F.3d at 506* (citation omitted). *But the decisions point to several factors for a court to consider: (1) whether the enacting body declared that it was clarifying a prior enactment; (2) whether a conflict or ambiguity existed prior to the amendment; and (3) whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history.  Middleton v. City of Chicago,* 578 F.3d 655, 663–65 (7th Cir.2009); *cf. Levy,* 544 F.3d at 507 . . . .  The fact that "an amendment alters, even 'significantly alters,' the original statutory language, ... does 'not necessarily' indicate that the amendment institutes a change in the law." *Brown,* 374 F.3d at 259 (quoting *Piamba Cortes,* 177 F.3d at 1283). Rather, the Court will apply the relevant factors to determine whether Congress merely "ma[de] what was intended all along even more unmistakably clear." *Id.* (citation omitted).

*Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp.2d at 590-91 (emphases added; footnotes omitted).

While the express language of W.Va. Code § 22-6-8(e), as amended by Senate Bill 360, does not state that it is clarifying existing law in light of *Leggett 1* and *Leggett 2* or overruling *Leggett 2*, the fact that this was the intention of the Legislature is supported by the following factors: (1) the inconsistent rulings reached in *Leggett 1* and *Leggett 2* in 2016 and 2017; (2) the express invitations in *Leggett 2* for the Legislature to clarify its intention in such regard; (3) the introduction of Senate Bill 360 in the very next regular legislative session; (4) the Note contained in Senate Bill 360 that "[t]he purpose of this bill is to clarify the royalty owed to a royalty owner in an oil and gas lease"; and (5) statements made to such effect in the legislative discussions of Senate Bill 360.  These factors when considered together are more than sufficient to demonstrate that it was the intent of the Legislature in adopting Senate Bill 360 to clarify existing law, correct a misunderstanding of the law, and/or overrule a wrongly decided case.  Accordingly, such

amended law should be applied to this case because the general prohibition against retroactive application of statutes does not apply to such an amendment.

**Contract Clauses Are Not Violated by Statute Or Its Amendment**

Because applying the statutory amendment does not violate the general prohibition against retroactive application of statutes for those reasons discussed above, it is not necessary to discuss the Contract Clauses.  However, to the extent that Defendant insists that such amendment substantially impairs existing contract rights, Plaintiffs note that the protections afforded by the Contract Clauses of the United States Constitution, Article I, § 10, and West Virginia Constitution, Article III, § 4, are not absolute but may be overridden by a compelling public policy.  *See* Syl. Pt. 3, *Shell v. Metropolitan Life Ins. Co.*, 380 S.E.2d 183 (W.Va. 1989) ("Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people.").  The West Virginia Supreme Court of Appeals has held:

> In determining whether a Contract Clause violation has occurred, a three-step test is utilized.  The initial inquiry is whether the statute has substantially impaired the contractual rights of the parties.  If a substantial impairment is shown, the second step of the test is to determine whether there is a significant and legitimate public purpose behind the legislation.  Finally, if a legitimate public purpose is demonstrated, the court must determine whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.

Syl. Pt. 4, *Shell v. Metropolitan Life Ins. Co.*, *id.*  *See also Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 410-12 (1983) (applying the same analysis to protection afforded by Contract Clause in United States Constitution).

The importance of honoring contracts is the goal of protecting the reasonable expectations of the parties.  Legislation which prevents a party from obtaining unintended

windfall profits and limits a party to gains it reasonably expected from an existing contract does not necessarily constitute a substantial impairment of the contract.  *Energy Reserves Group*, 459 U.S. at 411 ("state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment"; upholding regulation of the price of natural gas sold at the wellhead); *Shell*, 380 S.E.2d at 188 (same, quoting *Energy Reserves Group*).  *Accord Exxon Corp. v. Eagerton*, 462 U.S. 176, 190 (1983) (upholding regulations exempting royalty owners from natural gas severance tax increase and prohibiting producers from passing increase to consumers; explaining that statute does not violate the Contracts Clause "simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." ); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 31 (1977); *City of El Paso v. Simmons*, 379 U.S. 497, 515 (1965) ("Laws which restrict a party to those gains reasonably to be expected from the contract are not subject to attack under the Contract Clause, notwithstanding that they technically alter an obligation of a contract."); *Hudson Co. v. McCarter*, 209 U.S. 349, 357 (1908) (Holmes, J.).

Additionally, "[i]n determining the extent of the impairment, [courts] are to consider whether the industry the complaining party has entered has been regulated in the past."  *Energy Reserves Group*, 459 U.S. at 411.  *Accord* Syl. Pt. 5*, Shell*, *supra*.  "'In areas where there is regulation and the possibility of future regulation exists, state action affecting private contracts is less likely to be found violative of the contracts clause.'"  *Shell*, 380 S.E.2d at 189 (citations omitted).  Certainly, the oil and gas industry is one which has been and continues to be heavily regulated.[3]

---

[3] For reasons fully explained in *Estate of Tawney v. Columbia Natural Resources, LLC*, 2006 WL 6056969 at *__, Slip Op. at pp. 16-22 (W.Va.Cir.Ct. Roane Cnty. Aug. 4, 2006) (Evans, J.), and prior memoranda filed by the Plaintiffs herein and upon certification to the West Virginia Supreme Court of

"To suggest that preventing lessees and their successors from obtaining unexpected and unintended windfall profits is a substantial impairment of their rights, is to elevate form over substance and inequity over justice—results which the law should never countenance." *Estate of Tawney v. Columbia Natural Resources, LLC*, 2006 WL 6056969 at \*__, Slip Op. 21. Moreover, any impairment is also not "substantial" because W.Va.Code § 22-6-8(e) does not abolish EQT Production's right to recover and market gas; rather, it merely modifies how royalties on the leases would be paid. *City of Charleston v. Public Service Com'n of West Virginia*, 57 F.3d 385, 393 (4th Cir. 1995) ("'a reasonable modification of statutes governing contract remedies is much less likely to upset expectations than a law adjusting the express terms of an agreement.'"; also noting that in determining the parties' reliance courts focus on whether the abridged right was "'the central undertaking'" or "'primary consideration'" of the parties (quoting *United States Trust*, 431 U.S. at 19 n. 17; *City of El Paso*, 379 U.S. at 514)).  Indeed, the contract provisions allegedly impaired by W.Va.Code § 22-6-8 were not essential to the original leases at the time of their execution, because the central undertaking of the parties was the production of oil—not natural gas.  *Id.*

As to the present amendment, Defendant also cannot assert that it had any reasonable expectations based upon the Court's holding in *Leggett 2*, *supra*, concerning the leases and related conduct at issue in this lawsuit.  All of the leases at issue in this case were converted from flat-rate leases to 1/8 royalty leases based upon volume many years before the *Leggett 2* decision was entered.   Defendant also cannot reasonably contend that the parties had reasonable expectations that the lessees could deduct post-production expenses from the lessors' royalty based solely upon the language of the statute prior to the amendment effective on May 31, 2018.

---

Appeals, the enactment of the West Virginia Flat-Rate Statute in 1982 did not violate the Contract Clauses of the United States and West Virginia Constitutions.

In determining the propriety of its conduct at issue in this lawsuit, the only decision from the West Virginia Supreme Court of Appeals which the Defendant had as to offer guidance as to what "at the wellhead" language meant in connection with whether it permitted the deduction of post-production expenses was *Tawney v. Columbia Natural Resources, L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006). While Defendant may attempt to argue that it construed the nearly identical language in the statute differently from that in privately negotiated leases due to different canons of construction, certainly, at least prior to the *Leggett 2* decision, it would have behooved any reasonable lessee to heed and respect the holdings of the Court in *Tawney*.

Indeed, Judge Stamp noted in his Order discussing the need for certification that the "at the wellhead" language in the statute was just as ambiguous as the similar language at issue in *Tawney*. (ECF Doc. No. 174, at p. 28). Moreover, the Court also explained:

> Further, the 1906 lease and amendment agreements at issue do not indicate an intent contrary to the general rule. Here, the 1906 lease and amendment agreements do not allocate the expenses, or indicate how any deductions should be calculated. Indeed, the 1906 lease even appears to state that the lessors should receive the royalty in "full equal one-eighth (1/8) part or share of the same, **delivered free of charge**." ECF No. 152 Ex. A (emphasis added).

(ECF Doc. No. 174, at p. 28).

Based upon all of the above, Defendant cannot reasonably argue that the amendment to W.Va.Code § 22-6-8(e), effective on May 31, 2018, substantially impaired their reasonable expectations concerning any existing leases at issue in this lawsuit. Moreover, to the extent that any substantial impairment occurred, there is a significant and legitimate public purpose behind W.Va.Code § 22-6-8, and the adjustment of the rights and responsibilities of contracting parties found therein is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Syl. Pt. 4, *Shell v. Metropolitan Life Ins. Co.*, *supra*; *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. at 410-12.

15

The public policy set forth in W.Va.Code § 22-6-8 demonstrates a significant and legitimate public purpose and was clearly designed to address and eradicate unintended and unfair windfall profits.  W.Va.Code § 22-6-8(a)(2).  Additionally, in this regard, the Legislature has noted in W.Va. Code § 22-6-8(a)(4) its intent that its public policy be applied to the fullest extent constitutionally permitted by the Contract Clauses.  Obviously, a need to mention the Contract Clauses only arises when a retroactive application to existing contracts is sought if constitutionally permissible thereunder.   Section 22-6-8[4] provides, in pertinent part:

(a) The Legislature hereby finds and declares:

(1) That a significant portion of the oil and gas underlying this state is subject to development pursuant to leases or other continuing contractual agreements wherein the owners of such oil and gas are paid upon a royalty or rental basis known in the industry as the annual flat well royalty basis, in which the royalty is based solely on the existence of a producing well, and thus is not inherently related to the volume of the oil and gas produced or marketed;

(2) **That continued exploitation of the natural resources of this state in exchange for such wholly inadequate compensation is unfair, oppressive, works an unjust hardship on the owners of the oil and gas in place, and unreasonably deprives the economy of the state of West Virginia of the just benefit of the natural wealth of this state**;

(3) That a great portion, if not all, of such leases or other continuing contracts based upon or calling for an annual flat well royalty, **have been in existence for a great many years and were entered into at a time when the techniques by which oil and gas are currently extracted, produced or marketed, were not known or contemplated by the parties, nor was it contemplated by the parties that oil and gas would be recovered or extracted or produced or marketed from the depths and horizons currently being developed by the well operators**;

(4) **That while being fully cognizant that the provisions of section 10, article I of the United States Constitution and of section 4, article III of the Constitution of West Virginia, proscribe the enactment of any law impairing the obligation of a**

---

[4] The Act was initially codified in 1982 at *W.Va. Code*, § 22-4-1, and later re-codified at § 22-6-8.  *See McGinnis v. Cayton*, 173 W.Va 102, 117 & 118 & n. 27, 312 S.E.2d 765, 781 & n. 27 (1984) (Harshbarger, J., concurring).

**contract, the Legislature further finds that it is a valid exercise of the police powers of this state and in the interest of the state of West Virginia and in furtherance of the welfare of its citizens, to discourage as far as constitutionality possible the production and marketing of oil and gas located in this state under the type of leases or other continuing contracts described above**.

(b) **In the light of the foregoing findings, the Legislature hereby declares that it is the policy of this state to the extent possible, to prevent the extraction, production or marketing of oil or gas under a lease or leases or other continuing contract or contracts providing a flat well royalty or any similar provisions for compensation to the owner of the oil and gas in place, which is not inherently related to the volume of the oil or gas produced or marketed**, and toward these ends, the Legislature further declares that it is the obligation of this state to prohibit the issuance of any permit required by it for the development of oil and gas where the right to develop, extract, produce or market the same is based upon such leases or other continuing contractual agreements.

* * *

(Emphases added).

Lastly, Plaintiffs recognize that Judge Stamp of this Court has reached a contrary result in *Fout, et al. v. EQT Production Company*, Civil Action No. 1:15CV68, Memorandum Opinion and Order Regarding Defendant's Motions in Limine (ECF Doc. No. 158), at pp. 18-20. However, Plaintiffs respectfully submit that Judge Stamp's holding was incorrect due to the *Fout* Plaintiffs' failure to make the appropriate arguments and cite the relevant authority to the Court. *See* ECF Doc. No. 151 – Plaintiffs' Supplemental Brief and Response to Defendant's Motion in Limine Regarding Issues for Litigation Set Forth in Paragraph VIII of the Joint Pre-Trial Order.

## Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that Your Honorable Court grant their motion *in limine* to prohibit Defendants from relying upon *Leggett v. EQT Production Co.*, 239 W.Va. 264, 274-76, 800 S.E.2d 850, 860-62 (2017) (*Leggett 2*), as opposed to W.Va. Code § 22-6-8(e), as amended by Senate Bill 360 which became effective on May 31, 2018.

17

THE KAY COMPANY, LLC, WILLIAM
CATHER, Trustee of Diana Goff Cather
Trusts, and JAMES E. HAMRIC III, and all
other persons and entities similarly situated,

By Counsel

/s/ Marvin W.  Masters
West Virginia State Bar No. 2359
Richard A. Monahan
West Virginia State Bar No. 6489
April D. Ferrebee
West Virginia State Bar No. 8034
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301

Michael W. Carey
West Virginia State Bar No. 635
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street East, Suite 901
Charleston, West Virginia 25301

Counsel for Plaintiffs
F:\5\903\mol002.docx

18

## CERTIFICATE OF SERVICE

       I, Marvin W. Masters, hereby certify that on October 18, 2018, I electronically filed "Plaintiffs' Motion *in Limine* to Prohibit Defendants From Relying Upon Leggett 2 as Opposed to W.Va. Code § 22-6-8(e), as Amended by Senate Bill 360 " with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

       David K. Hendrickson
       Carl L. Fletcher, Jr.
       Hendrickson & Long PLLC
       214 Capitol Street
       Post Office Box 11070
       Charleston, West Virginia  25339
       daveh@handl.com
       cfletcher@handl.com
       Counsel for Defendants

            /s/ Marvin W. Masters
            West Virginia State Bar No. 2359
            The Masters Law Firm lc
            181 Summers Street
            Charleston, West Virginia  25301
            mwm@themasterslawfirm.com