IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

THE KAY COMPANY, LLC,
et al.

      Plaintiffs,

v.

                                    CIVIL ACTION NO.  1:13-CV-151
                                    (Honorable John Preston Bailey)

EQT PRODUCTION COMPANY,
et al.

      Defendants.

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PROHIBIT DEFENDANTS FROM RELYING UPON *LEGGETT 2* AS OPPOSED TO W. VA. CODE § 22-6-8(e), AS AMENDED BY SENATE BILL 360

### I.      INTRODUCTION

Plaintiffs filed a Motion *in Limine* (Pls.' Mot. in Lim. to Prohibit Defs. From Relying upon *Leggett 2* as Opposed to W. Va. Code § 22-6-8(e), as Am. by Senate Bill 360, ECF No. 643) seeking to prevent Defendants from relying at trial on *Leggett v. EQT Prod. Co.*, 800 S.E.2d 850, 853 (W. Va. 2017), which authoritatively interpreted the statutory royalty applicable to the leases in this case.  Plaintiffs contend that the Senate Bill 360 amendment to section 22-6-8 abrogated the court's decision in *Leggett*.  Plaintiffs' Motion is without merit and must be denied because Senate Bill 360 can only be applied prospectively.  Plaintiffs acknowledge that they have already lost this issue before Judge Stamp.  Pls.' Mot. in Lim., *supra* at 17.  This Court should reach the same conclusion.

## II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

In 1982, the West Virginia Legislature enacted West Virginia Code § 22-6-8, the Flat-Rate Statute, which required all lessees of "flat-rate leases," as a prerequisite for obtaining a drilling permit, to either (1) certify that they would thereafter pay a volume-based, one-eighth royalty calculated "at the wellhead" to the landowners in lieu of the flat annual rate, or (2) modify the terms of the leases to provide for payment of a one-eighth royalty to the landowners. W. Va. Code § 22-6-8.  In *Leggett v. EQT Production Co.*, 800 S.E.2d 850, 853 (W. Va. 2017), after withdrawing an initial opinion and upon rehearing, the West Virginia Supreme Court of Appeals held that the Flat-Rate Statute's one-eighth statutory royalty permits lessees to deduct reasonable post-production expenses from their statutory royalty payments.[1]  More specifically, the court concluded that the term "at the wellhead," as used in the Flat-Rate Statute, West Virginia Code section 22-6-8(e), is *not* ambiguous, and that the lessee is able to utilize the work-back method to calculate the value of gas at the wellhead.  Syl. pt. 8, *id.* at 853.

The *Leggett* court concluded that the term "at the wellhead" has a "very precise meaning within the industry," and that the Legislature's use of that language "clearly delineates the place of royalty valuation."  *Id.* at 866.  The court further concluded that the most logical way to determine the wellhead price is to deduct the post-production costs in order to determine the wellhead value.  *Id.*  The court held "[w]ith no hesitation . . . that the industry-recognized 'net-

---

[1] Plaintiffs cite to *Tawney v. Columbia Natural Resources, L.L.C.*, 633 S.E.2d 22 (W. Va. 2006), an earlier Supreme Court of Appeals case that interpreted the phrase "at the wellhead" in the context of oil and gas leases for purposes of determining whether post-production expenses could be deducted from the promised royalty.  In that context, the court decided that the leases did not permit deduction of post-production expenses.  As the court later held in *Leggett*, however, the decision was inapposite for purposes of interpreting "at the wellhead" in the context of the Flat-Rate Statute.  *Tawney* was therefore rejected as irrelevant in *Leggett* and has no bearing on the issue raised in Plaintiffs' motion.

back' or 'work-back' method of royalty calculation is equally just to both parties and, more importantly, the closest appreciable method of effectuating what the Legislature envisioned." *Id.* at 867.

In 2018, the West Virginia Legislature amended the Flat-Rate Statute by passing Senate Bill 360, which forbids the issuance of permits for new wells subject to flat-rate leases but provides a mechanism to avoid the permit prohibition, if the lessee agrees to pay a one-eighth royalty to the lessor on the first unaffiliated sale, free of the post-production expense deductions that the *Leggett* court found to be authorized unambiguously under the original Flat-Rate Statute. W. Va. Laws Ch. 86 (S.B. 360) (codified at W. Va. Code § 22-6-8(e) (2018)).

Senate Bill 360 nowhere suggests that it was intended to apply retroactively.  To the contrary, the Flat-Rate Statute is triggered only when a drilling permit applicant "file[s] [an] application," W. Va. Code § 22-6-8(e) (2018), and governs whether a permit should be issued for that application; thus, by its terms, the statute cannot apply to applications filed and permits issued *in the past*.  Indeed, the original Flat-Rate Statute, like Senate Bill 360, was specifically written to function prospectively at the time of a new permit application because the Legislature was concerned that applying the statute not only to new permits under preexisting leases, but also to existing permits under those leases, would violate the Contract Clause.[2]  *See* W. Va. Code § 22-6-8(a)(4).  Unsurprisingly, therefore, Senate Bill 360 omits any suggestion that it was intended to apply retroactively to existing permits.

During the hearings on the Bill, the Senators indicated that the amendment would be applied prospectively only.  For example, in the following discussion between Senator Sypolt

---

[2] As explained elsewhere, even though the Legislature purported to account for the Contract Clause, the statute's design nevertheless runs afoul of that Clause.

and the Committee Counsel during a Senate Energy Industry and Mining Committee hearing, it was clear that both understood Senate Bill 360 as applying only prospectively, to new applications for permits:

> SENATOR SYPOLT: Thank you, Mr. Chairman.  I do have a question of counsel, if somebody would come up.  I see that -- I understand what the intent of this bill is and, basically, what it would accomplish should it pass the Legislature and be signed into law, is it would change contracts which have been executed years ago.  So, in effect, my question is: Does that pose a constitutional problem because we're meddling with a contract which was properly executed some time in the past and now we're saying that's not valid any more.  We're going to change it.

> COMMITTEE COUNSEL: That's a good question, senator, and actually, if you look, the entire Code section is included in the bill.  The Legislature, when it passed the -- this original law in 1982, addressed those concerns and acknowledged the potential constitutional problem with -- as you've described it, essentially, modifying private contracts.  My understanding in the way the Legislature threaded that needle at the time, was that they're not per se modifying these contracts, but they are making it -- technically what it is, is the issuance of the permit to drill --

> SENATOR SYPOLT: Uh-huh.

> COMMITTEE COUNSEL: -- is contingent on the lessee agreeing to pay a higher royalty than what it contracted for.· So it's perhaps a -- it's a very small distinction, but --

> SENATOR SYPOLT: So, this is actually – you're talking about the Surface Owners' Rights Act of 1982, this section of Code that's being modified.

> COMMITTEE COUNSEL: I'm not sure if that's what -- if that's what it was called, but yes, as it was passed in 1982 --

> SENATOR SYPOLT: Right.  Well, as you describe it, I'm familiar with that -- with that Code and I understand that.

> COMMITTEE COUNSEL: Okay.

> SENATOR SYPOLT: *But I thought that this bill actually modified existing leases, not prospectively, but retroactively. Am I -- am I misreading it?*
>
> COMMITTEE COUNSEL: *No. No, we would not be retroactive as far as --*
>
> SENATOR SYPOLT: *I got you.*
>
> COMMITTEE COUNSEL: -- companies having to -- companies and land owners having to --
>
> SENATOR SYPOLT: Thank you. You've answer[ed] my question.

*Hearing on S. 360 Before the S. Energy, Indus., & Mining Comm.*, 2018 Leg., Reg. Sess. 29-31

(W. Va. Jan. 25, 2018) (emphases added). A transcript of the proceedings referenced above

transcribed from viewing the online video of the hearings is attached as Exhibit 1.

    In a later hearing before the Senate Judiciary Committee, Chairman Trump and Senator

Karnes both indicated that they believed the amendment would not apply retroactively:

> CHAIRMAN TRUMP: Thank you. Mr. Miller, I have a quick question. You said that you think this may apply to existing wells. You know, my initial reading of it is different from that, to the extent that it keeps all that old language, it looks to me as if the new matrix or new changes would be triggered -- the trigger event would be an application.

*Hearing on S. 360 Before the S. Judiciary Comm.*, 2018 Leg., Reg. Sess. 47 (W. Va. Feb. 22,

2018). A transcript of the proceedings referenced above transcribed from viewing the online

video of the hearings is attached as Exhibit 2.

> SENATOR KARNES: Okay. So, I mean yes, people could argue anything, but as a practical matter, this isn't really a retroactive provision, even though someone might argue so. It's clearly – probably prospective.

*Id.* at 55.

When the Bill was sent to the floor for a vote, Senator Trump once again affirmed that he believed the amendment would only apply prospectively:

> So if -- if this legislation becomes law, in my opinion, it will have the effect or consequence of nullifying the recent -- the more recent Supreme Court decision in Leggett and at least prospectively -- I think its application will be prospective because the whole permit prohibition is maintained in the bill.

*Hearing on S. 360*, 2018 Leg., Reg. Sess. 6 (W. Va. Feb. 28, 2018). A transcript of the proceedings referenced above transcribed from viewing the online video of the hearings is attached as Exhibit 3.

Senate Bill 360 became effective on May 31, 2018.  S. 360 (as enrolled).  In this case, Plaintiffs have filed a Motion *in Limine* to prevent Defendants from relying on *Leggett*.  In their Motion, Plaintiffs contend that Senate Bill 360 should apply retroactively to wells operating under permits issued prior to its effective date.

### III.   ARGUMENT

Plaintiffs' Motion *in Limine* raises two distinct issues: (1) whether Senate Bill 360 should be construed to operate retroactively to wells operating under permits issued prior to the effective date of Senate Bill 360, and (2) if it were construed to operate retroactively, whether Senate Bill 360 would violate Article 3, Section 4 of the West Virginia Constitution and Article I, Section 10, Clause 1 of the United States Constitution (collectively the "Contract Clauses").  The first issue is a question of the construction of a West Virginia statute, and as such, decisions by the West Virginia Supreme Court of Appeals are controlling, notwithstanding any federal court decisions to the contrary.  *Findley v. State Farm Mut. Auto. Ins. Co.*, 576 S.E.2d 807, 820 n.21 (W. Va. 2002) (quoting Syl. pt. 3, in part, *Clarksburg Elec. Light Co. v. City of Clarksburg*, 35 S.E. 994 (W. Va. 1900)) ("The decision of the highest court of a State in the construction of its

statutes . . . is the controlling rule of decision in federal courts, where there is no federal question."). The second issue is a question of state and federal constitutional law, and as such, decisions by both state courts and federal courts are relevant.

This Court should follow Judge Stamp's decision and deny Plaintiffs' Motion *in Limine* because, under West Virginia law, Senate Bill 360 does not apply retroactively to reach wells operating under permits issued prior to its effective date. Therefore, this Court need not, and should not, reach the Contract Clause issue, but if it does, the Motion should still be denied because retroactive operation of Senate Bill 360—as with prospective application of Senate Bill 360—violates the Contract Clause.

> A. *Senate Bill 360 should not be construed to operate retroactively to apply to wells operating under existing permits because the statute affects substantive rights and the Legislature did not expressly intend the amendment to operate retroactively.*

A West Virginia statute that affects substantive rights is "presumed to be prospective in its operation unless expressly made retrospective." W. Va. Code § 2-2-10(bb) (2018); *Mildred L.M. v. John O.F.*, 452 S.E.2d 436, 442 n.10 (W. Va. 1994). A statute is substantive, and thus subject to the presumption against retroactivity, if retroactive application would "attach[] new legal consequences to events completed before its enactment." *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 480 S.E.2d 538, 544 (W. Va. 1996) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)). Thus, a two-prong test applies to determine whether a West Virginia statute operates retroactively. First, "a determination must be made regarding whether the new provision would, 'if applied in a pending case, attach a new legal consequence to a completed event.' Second, such new provision would not be applied 'unless the Legislature has made clear its intention that it shall apply [retroactively].'" *Gallant v. Cty. Comm'n*, 575 S.E.2d 222, 228 (W. Va. 2002) (quoting *Pub. Citizen*, 480 S.E.2d at 544). Senate Bill 360, if applied

7

retroactively, would plainly affect substantive rights by changing the method for calculation of the Flat-Rate Statute's mandatory royalty from the method applicable at the time of permitting. Because the Legislature did not clearly and expressly intend that result, Senate Bill 360 cannot be applied retroactively.

1. _Senate Bill 360, if applied retroactively to reach wells operating under existing permits, would attach new legal consequences to events completed before its enactment._

Prior to the passage of Senate Bill 360, by operation of the original Flat-Rate Statute as construed by the *Leggett* court, EQT was permitted to deduct post-production expenses from the royalties it paid pursuant to the Flat-Rate Statute. If Senate Bill 360 were to apply retroactively to wells operating under permits obtained under that statutory regime, then the royalty EQT would be required to pay would increase substantially. Applying the amendment retroactively would affect EQT's substantive rights by imposing these new legal consequences.

Judge Stamp recently addressed the retroactivity of Senate Bill 360 and ruled that it cannot be applied retroactively. *Fout v. EQT Prod. Co.*, No. 15-cv-00068-FPS, slip op. at 18-20 (N.D. W. Va. Apr. 6, 2018). In *Fout*, which involved the same issue raised by Plaintiffs' Motion, EQT filed a motion *in limine* to preclude the plaintiffs from relying on Senate Bill 360 at trial. *Id.* at 18-19. Specifically, Judge Stamp stated, "This Court finds that EQT is correct that Senate Bill 360 cannot apply retroactively to the plaintiffs' claims in this case." *Id.* at 19. In granting EQT's motion, Judge Stamp cited *Public Citizen* for the proposition that statutory amendments "will not apply to pending cases or cases filed subsequently based upon facts completed before the statute's effective date." *Id.* at 19-20 (quoting *Public Citizen*, 480 S.E.2d at 543-44).

*Public Citizen* involved amendments to a provision of West Virginia's Uniform Commercial Code involving "ambiguous payees" of negotiable instruments. *Id.* Before the amendments, the law provided that "unless the instrument is made payable to two or more payees, in the alternative, it 'is payable to all of them and may be negotiated, discharged or enforced *only* by all of them.'" *Id.* (quoting W. Va. Code § 46-3-116 (1992) (amended 1993)). After the amendments, the law allowed "*either* payee to indorse and negotiate a check without the other payee's endorsement." *Id.* The West Virginia Supreme Court of Appeals reasoned that the amendments "dramatically changed the law with respect to the problem of the ambiguous payees." *Id.* Specifically, the amendments would change the legal effect of issuing an instrument to ambiguous payees, because the amendments reversed the presumption regarding who could enforce or negotiate the instrument. *See id.* Thus, the court concluded that the amendments, if applied retroactively, would "attach[] new legal consequences to events completed before its enactment." *Id.* (quoting *Landgraf*, 511 U.S. at 270). That is exactly what would happen here. Applying Senate Bill 360 to previously issued drilling permits would require EQT to pay more than previously required under unambiguous pre-amendment law, as authoritatively interpreted by the West Virginia Supreme Court of Appeals.

Plaintiffs' primary argument is that the retroactivity analysis has no place here because Senate Bill 360 did not substantively change the law at all. Plaintiffs argue the Legislature was purporting only to "clarify" what it originally had intended and to overrule *Leggett* rather than to work a substantive change. This novel argument ignores that the Supreme Court of Appeals had already authoritatively construed the original Flat-Rate Statute to permit deduction of reasonable post-production expenses, and that Senate Bill 360, however characterized by the Legislature, changed the law by eliminating those deductions.

9

Indeed, the Supreme Court of Appeals has not hesitated to rule that a statute passed to overrule one of its decisions constitutes a substantive change in the law. *Findley*, 576 S.E.2d at 820-21. In *Findley*, a statutory amendment was passed in response to a prior decision by the Supreme Court of Appeals that required insurers to adjust their premiums when they incorporated an exclusion into a policy. *Id.* at 818. In reaction to this decision, the Legislature amended the statute to clarify that insurers were not required to adjust their premiums, as long as their rates were approved by the insurance commissioner. *Id.* at 818-19. The Supreme Court of Appeals was then asked to determine whether the amendment applied retroactively to policies issued before the effective date of the amendment. *Id.* at 817-18. The court held that the amendment did not apply retroactively, because "[t]he effect of such amendatory language is to extinguish any litigable rights that have accrued as a result of this Court's holding in [the prior decision], and to foreclose lawsuits that have been initiated as a result thereof." *Id.* at 820. Thus, the court reasoned, the amendment was substantive in nature, *id.* at 820-21, even though the Legislature stated that the amendment was intended only as "a clarification of existing law." *Id.* at 819 (quoting W. Va. Code § 33-6-30(c) (2002)).

Likewise, here, Senate Bill 360 "extinguishes litigable rights" of lessees that were confirmed in *Leggett*. There, the court, reading statutory language it deemed to be unambiguous, held that it was appropriate to deduct post-production expenses in the calculation of the statutory royalty imposed by the Flat-Rate Statute. Syl. pt. 8, *Leggett*, 800 S.E.2d at 853. The Legislature extinguished this "litigable right" to apply this method of calculating the statutory royalty when it subsequently amended section 22-6-8(e) to provide that such expenses could not be deducted in calculating the royalty. W. Va. Laws Ch. 86 (S.B. 360) (codified at W. Va. Code § 22-6-8(e) (2018)).

It does not matter that the Legislature of 2018 disagreed with the Supreme Court of Appeals or that it viewed Senate Bill 360 as reinstituting what it believed the Legislature—as of 1982—had intended all along.  The Supreme Court of Appeals had authoritatively interpreted the original Flat-Rate Statute to permit post-production expense deductions, finding the statute's language unambiguous, and that interpretation is binding on this Court.  *Clarksburg Elec. Light Co. v. City of Clarksburg*, 35 S.E. 994 (W. Va. 1900)).  As the Fourth Circuit has noted, a lawmaking body cannot simply label a change in the law as "clarifying" to avoid scrutiny, "because that would enable the [legislature] to make substantive changes in the guise of clarification." *United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir. 1995).  "In determining whether [it] will accept the [legislature's] characterization of the amendment, [this Court] needs to look to the amendment's purpose and effect." *Id.* (internal quotation marks omitted).  Here, the Legislature clearly intended to eliminate the deduction of post-production expenses that the *Leggett* court had held to be permitted unambiguously under the original Flat-Rate Statute.  That is a substantive change.  If Senate Bill 360 had not worked a substantive change in the law by changing the calculation of the statutory royalty, there would be no point to Plaintiffs' Motion.

      2.   <u>The Legislature has not expressed a clear intent that Senate Bill 360 should apply retroactively to wells operating under existing permits.</u>

Because Senate Bill 360 worked a substantive change in West Virginia law, Plaintiffs bear the burden of showing that the Legislature "expressly made [it] retrospective."  W. Va. Code § 2-2-10(bb).  Plaintiffs do not even attempt to meet this burden, relying entirely on the meritless argument that Senate Bill 360 is not subject to retroactivity analysis because "it is clarifying existing law" rather than changing the law.  Pls.' Mot. in Lim., *supra* at 11.  Because Plaintiffs cannot meet their burden of showing that Senate Bill 360 was "expressly made retrospective," the law can only be applied prospectively.

When a statutory amendment is substantive in nature, it is "presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute."  Syl. pt. 2, *Conley v. Workers' Comp. Div.*, 483 S.E.2d 542, 543 (W. Va. 1997) (quoting Syl. pt. 1, *Myers v. Morgantown Health Care Corp.*, 434 S.E.2d 7, 7 (W. Va. 1993)).  A statement by the Legislature that an amendment was intended merely to provide "clarification" does not amount to a statement of intent that the amendment should apply retroactively.  *See Findley*, 576 S.E.2d at 819.  For example, in *Findley*, the Legislature included in the amending language a statement that the amendment was

> specifically intended to *clarify the law and correct a misinterpretation and misapplication of the law* that was expressed in the holding of the Supreme Court of Appeals of West Virginia in the case of *Mitchell v. Broadnax*, [208 W.Va. 36] *537 S.E.2d 882 (W. Va. 2000).*  These amendments are a *clarification of the existing law* as previously enacted by this Legislature.

*Id.* (emphasis added).

Nevertheless, the court held that the statutory language did not contain "a clear expression of legislative intent" that the amendment should apply retroactively.  *Id.* at 820. Therefore, the court concluded that the Legislature had not overcome the presumption against retroactivity under West Virginia Code section 2-2-10(bb), and the amendment could be applied prospectively only.  *Id.* at 820-21.

If the extensive statement of purpose in *Findley* was insufficient to indicate legislative intent to retroactively apply the amendment, the language in Senate Bill 360 is insufficient as well.  The only language in the text of Senate Bill 360 regarding legislative purpose reads as follows: "The purpose of this bill is to clarify the royalty owed to a royalty owner in an oil and gas lease."  S.B. 360 (as introduced).  Like in *Findley*, the Legislature in this case did not expressly state that it intended Senate Bill 360 to apply retroactively to wells operating under

12

previously issued permits.  *See* W. Va. Code § 22-6-8(e) (2018).  And, as explained above, the structure of Senate Bill 360 itself demands only prospective application, since the Flat-Rate Statute—both originally and as amended—is triggered only when a natural gas or oil producer files a permit application for a new well.  *See* W. Va. Code § 22-6-8(d).  By its terms, the statute does not apply to prior permits—an intentional design choice intended, however ineffectively, to blunt the Legislature's Contract Clause concern.  *See id.* §§ 22-6-8(a)(4), (d), (e).

Furthermore, the hearings on the Bill indicate that at least some members of the Legislature and committee counsel understood Senate Bill 360 to apply only prospectively.  *See Hearing on S. 360 Before the S. Energy, Indus., & Mining Comm.*, 2018 Leg., Reg. Sess. 29-31 (W. Va. 2018); *Hearing on S. 360 Before the S. Judiciary Comm.*, 2018 Leg., Reg. Sess. (W. Va. Feb. 22, 2018) ("CHAIRMAN TRUMP: . . . [I]t looks to me as if the new matrix or new changes would be triggered – the trigger event would be an application.") (emphasis added); *id.* at 55 (SENATOR KARNES: . . . "[A]s a practical matter, this isn't really a retroactive provision, even though someone might argue so.  It's clearly – probably prospective.") (emphasis added).  Plaintiffs acknowledge as much.  (Plfs.' Mot. in Lim., *supra* at 7 (stating that the legislative discussions of Senate Bill 360 demonstrate "some confusion as to whether subsection (e) was intended to be prospective or retroactive")).  Therefore, the Legislature did not express a clear intent for Senate Bill 360 to apply retroactively.

Because Senate Bill 360 is substantive in nature, and the Legislature did not express a clear intent that the amendment would apply retroactively, the rule of statutory construction in West Virginia Code section 2-2-10(bb) requires that Senate Bill 360 be applied prospectively only, in the context of permit applications filed on or after its effective date.

B.   *Applying Senate Bill 360 retroactively will violate the Contract Clauses of the United States Constitution and the West Virginia Constitution.*

This Court need not reach the Contract Clause issue raised by Plaintiffs because Senate Bill 360 plainly does not apply retroactively.  Moreover, the possibility of deciding a significant constitutional question—on a motion *in limine*, no less—further suggests that this Court should construe Senate Bill 360 not to apply retroactively.  *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring) (it is "a cardinal principle" that courts will adopt any "fairly possible" reading of a statute "by which [a constitutional] question may be avoided"); *W. Va. Human Rights Comm'n v. Garretson*, 468 S.E.2d 733, 739 (W. Va. 1996) ("[W]e must interpret the law to avoid constitutional conflicts, if the language of the law will reasonably permit such avoidance.").  Indeed, the Legislature in both 1982 and 2018 purposefully designed the Flat-Rate Statute to function only *prospectively*, when triggered by the filing of a permit application, expressly for the purpose of avoiding (unsuccessfully) running afoul of the Contract Clauses.  *See* W. Va. Code § 22-6-8(a)(4) (2018).  However, if this Court does reach the issue, it should conclude that applying Senate Bill 360 retroactively, to reach wells operating under previously issued permits, would violate the Contract Clauses.[3]

---

[3] To be clear, the motion *in limine* at bar involves a very specific proposed application of Senate Bill 360:  that Senate Bill 360 applies *retroactively* to alter the terms according to which permits were issued from 1982 through the effective date of Senate Bill 360, and therefore changes the terms that were imposed when the lessees applied for those permits.  The Motion and this Memorandum in Opposition do not address any other Contract Clause questions, including whether the original Flat-Rate Statute violates the Contract Clauses or whether Senate Bill 360, applied *prospectively* to future permit applications, violates the Contract Clauses, and therefore those questions are not before this Court.

It is EQT's position that any operation of the Flat-Rate Statute—in both its 1982 and current form, and including prospective application to new permit applications—violates the Contract Clauses.  Indeed, in a separate action, EQT has challenged the constitutionality of the Flat-Rate Statute on federal Contract Clause grounds.  Complaint for Declaratory Relief at 1, *EQT Prod. Co. v. Caperton*, No. 18-cv-72 (N.D. W. Va. Apr. 12, 2018), ECF No. 1.  A fully

Both the Supreme Court of the United States and the West Virginia Supreme Court of Appeals have employed the same three-prong test to determine whether a statute violates the Contracts Clauses.  Under this test, "the initial inquiry is whether the statute has substantially impaired the contractual rights of the parties."  Syl. pt. 4, *Shell v. Metro. Life Ins. Co.*, 380 S.E.2d 183, 184 (W. Va. 1989).  *See also Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983).  If the court determines that there has been substantial impairment, the second step is to determine whether there is "a significant and legitimate public purpose behind the legislation."  Syl. pt. 4, *Shell*, 380 S.E.2d at 184.  Finally, if a legitimate public purpose is demonstrated, the court must determine "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption."  *Id.*  Retroactive application of Senate Bill 360 would violate the Contract Clauses on all counts.

1. *Retroactive application of Senate Bill 360 would substantially impair the contractual rights of oil and gas lessees.*

A state law substantially impairs contractual rights when it interferes with contracting parties' reasonable expectations, abridges contractual rights that induced the parties to contract in the first place, or prevents a party from "safeguarding or reinstating" its rights.  *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018).  *See also Balt. Teachers Union* v. *Mayor of Balt.*, 6 F.3d 1012, 1017 (4th Cir. 1993).  Senate Bill 360 has effectively altered the payment terms of EQT's leases by legislative fiat, withholding necessary permits unless EQT accedes to the payment structure

---

briefed motion to dismiss is pending in that matter. Motion to Dismiss for Failure to State a Claim, *Caperton*, No. 18-cv-72 (N.D. W. Va. May 31, 2018), ECF No. 17; Memorandum in Opposition re Motion to Dismiss for Failure to State a Claim, *Caperton*, No. 18-cv-72 (N.D. W. Va. July 20, 2018), ECF No. 39; Reply to Response to Motion re Motion to Dismiss for Failure to State a Claim, *Caperton*, No. 18-cv-72 (N.D. W. Va. Aug. 3, 2018), ECF No. 42.

imposed by the State.  By changing the express payment term in these private contracts, the Flat-Rate Statute substantially impairs the leases.  If applied retroactively, as Plaintiffs suggest, Senate Bill 360 would also alter the terms that were imposed at the time that the lessees applied for permits.

Plaintiffs do not seriously contest that changing the payment terms of leases subject to existing permits establishing royalties for natural-gas extraction constitutes a substantial impairment.   Indeed,   the   Supreme   Court   has   invalidated   other   laws   that "superimpose[e] . . . obligations . . . conspicuously beyond those that [a party] had voluntarily agreed to undertake." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978).  That is precisely what Senate Bill 360 does if applied retroactively.   The compensation that EQT negotiated and agreed to pay lessors in exchange for the right to extract natural gas is a basic term of the contract.  *See Ohio Fuel Oil Co.* v. *Greenleaf*, 99 S.E. 274, 278 (W. Va. 1919) (noting that the provision of mineral rights in exchange for royalties is a "material element to be considered in the interpretation of the contract").  Senate Bill 360 imposes a different payment scheme—one "conspicuously beyond" that to which EQT agreed in  its original leases and even beyond the scheme imposed when EQT applied for drilling permits following the original enactment of the Flat-Rate Statute—it constitutes a substantial impairment.  To be sure, the State has some leeway to regulate the oil and gas industry, but "[t]he fact that some incidents of a commercial activity are heavily regulated does not put the regulated firm on notice that an *entirely different scheme of regulation* will be imposed."  *Chrysler Corp.* v. *Kolosso Auto Sales, Inc.*, 148 F.3d 892, 895 (7th Cir. 1998) (emphasis added).  Plaintiffs identify no previous regulation of post-production expenses, and other industry regulations do not provide the State with license to alter private leases any way it pleases.  *See Shell*, 380 S.E.2d at 189 ("[P]rior

16

regulation must share more in common with the challenged legislation than merely the industry in which it operates to bar a subsequent finding of substantial impairment.") (alteration in original) (quoting *Ross v. City of Berkeley*, 655 F.Supp. 820, 831 (N.D. Cal. 1987)).   It is common sense that changing a payment term disrupts contracting parties' reasonable expectations.  Senate Bill 360 does just that, and it constitutes a substantial impairment.

### 2. *Senate Bill 360 lacks a significant and legitimate public purpose.*

If a statutory amendment substantially impairs a private party's contractual rights, the amendment violates the Contract Clauses unless there is a significant and legitimate public purpose behind the amendment, and the impairment of contractual rights is "of a character appropriate" to such purpose.  Syl. pt. 4, *Shell*, 380 S.E.2d at 187; *Energy Reserves Grp.*, 459 U.S. at 412.  The purported public purpose behind West Virginia Code section 22-6-8 was made abundantly clear by the Legislature when it was originally passed: The Legislature thought that flat-rate oil and gas leases provided a select group of lessors with "wholly inadequate compensation."  W. Va. Code § 22-6-8(a)(2) (2018).  But there is no "significant and legitimate public purpose" in redistributing the benefits of a private contract to the Legislature's favored parties.  *See Allied Structural Steel*, 438 U.S. at 244 (noting that states do not have plenary police power when the exercise of that power "effects substantial modifications of private contracts").  In fact, increasing the compensation of one party to a private contract is the exact type of legislative meddling that the Contract Clause exists to foreclose.  *Cf. Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934) (noting states may impair private contracts only to "protect the lives, health, morals, comfort, and general welfare of the people").

Plaintiffs here suggest that Senate Bill 360 is necessary to prevent EQT from receiving a "windfall" but fundamentally misunderstand when the so-called "windfall profits" justification

can support a substantial impairment of contractual rights.  That "justification" has been applied only in extraordinary circumstances, and even then only when supported by an otherwise significant and legitimate public purpose.  The Supreme Court of the United States has only applied the "windfall profits" justification where a state responds to a crippling emergency—like the Great Depression—and where the state itself created an unexpected boon for a contracting party.  *See City of El Paso v. Simmons*, 379 U.S. 497, 515 (1965).  Even then, the justification has been applied only where there is an independent "significant and legitimate" public purpose undergirding the legislation.  The "windfall profits" justification has never been used simply to improve the economic position of one contracting party over the other.

Plaintiffs do not, and cannot, claim that Senate Bill 360 falls into either of these narrow categories in which something like a "windfall profits" justification would apply.  Before Senate Bill 360, EQT deducted the post-production expenses that it actually incurred.  Doing so does not constitute an "unexpected windfall" under any understanding of that term.  And without a "windfall" to be corrected, Senate Bill 360 lacks a significant and legitimate public purpose.

### 3. *Senate Bill 360 is not a reasonable means of achieving West Virginia's stated purpose.*

Even if this Court were to apply the "windfall profits" exception, Plaintiffs have not demonstrated that Senate Bill 360 is "reasonable" and "necessary" as a means of achieving the State's goal.  Rather than eliminating windfall profits, Senate Bill 360 *creates* them—in favor of Plaintiffs.  Plaintiffs argue that EQT should be limited to what it expected to receive when it executed the leases, Plfs.' Mot. in Lim., *supra* at 13.  Both before and after *Leggett*, the state of affairs was this: if EQT paid the statutory extraction-based royalty, it could deduct post-production expenses, and the royalty was based on the first sale "at the wellhead."  But with Senate Bill 360, West Virginia chose to shift extra-contractual benefits to lessors—benefits that

18

do not even derive from EQT's use of the leased right to extract, but instead from the post-production labors of EQT and its affiliates and the vagaries of how natural gas is brought to market.  Now, instead of sharing the post-production expenses, lessors are purportedly entitled to a royalty free of any deductions and based on a higher, "unaffiliated" sale price that EQT did not itself receive.  Plaintiffs fail to show how any "windfall profits" justification rationally supports such an impairment of EQT's contractual rights.

### IV.  CONCLUSION

This Court should join Judge Stamp in concluding that Senate Bill 360 cannot operate retroactively because such construction would affect substantive rights—by attaching new legal consequences to permits that EQT already obtained—in a way that was not clearly and expressly intended by the Legislature.  If this Court were to apply Senate Bill 360 retroactively, it would violate the Contract Clauses of the United States Constitution and the West Virginia Constitution because Senate Bill 360, in any application, impairs fundamental payment terms of private leases and is unsupported by any generally applicable legitimate public purpose.  Therefore, the Court should deny Plaintiffs' Motion *in Limine*.

> **EQT PRODUCTION COMPANY; EQT CORPORATION; EQT ENERGY, LLC; EQT INVESTMENTS HOLDINGS, LLC; EQT GATHERING, LLC; and EQT MIDSTREAM PARTNERS, LP, By Counsel.**
>
> ***/s/  David K. Hendrickson     11/01/2018***
> David K. Hendrickson, Esquire (#1678)
> **HENDRICKSON & LONG, PLLC**
> 214 Capitol Street (zip 25301)
> P. O. Box 11070
> Charleston, West Virginia  25339
> (304) 346-5500
> (304) 346-5515 (facsimile)
> daveh@handl.com

John Kevin West, Esquire (pro hac vice)
**STEPTOE & JOHNSON PLLC**
Huntington Center
Suite 2200
41 South High Street
Columbus, Ohio  43215
(614) 458-9889
(614) 221-0952 (facsimile)
kevin.west@steptoe-johnson.com

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

THE KAY COMPANY, LLC, et al.,

     Plaintiffs,

v.                                                    CIVIL ACTION NO.  1:13-CV-151
                                                      (Honorable John Preston Bailey)

EQT PRODUCTION COMPANY et al.,

     Defendants.

<u>**CERTIFICATE OF SERVICE**</u>

    I, David K. Hendrickson, counsel for Defendants, do hereby certify that on the **1st day of November 2018**, a true and exact copy of the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PROHIBIT DEFENDANTS FROM RELYING UPON LEGGETT 2 AS OPPOSED TO W. VA. CODE § 22-6-8(e), AS AMENDED BY SENATE BILL 360** was served upon counsel of record using the Court's CM/ECF system which will deliver true and exact copies to the following counsel of record:

Marvin W. Masters, Esquire (#2359)
THE MASTERS LAW FIRM, LC
181 Summers Street
Charleston, West Virginia   25301
*Counsel for Plaintiffs*

Michael W. Carey, Esquire (#635)
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
Suite 901
707 Virginia Street East
Charleston, West Virginia  25301
*Counsel for Plaintiffs*

*/s/  David K. Hendrickson     11/01/2018*
David K. Hendrickson, Esquire (#1678)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P. O. Box 11070
Charleston, West Virginia  25339
(304) 346-5500
(304) 346-5515 (facsimile)
daveh@handl.com