IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

THE KAY COMPANY, LLC,
WILLIAM CATHER, Trustee
of Diana Goff Cather Trusts,
and JAMES E. HAMRIC III,
and all other persons and
entities similarly situated,

                Plaintiffs,

v.                                                  Case No. 1:13-CV-151
                                                  Honorable John Preston Bailey

EQT PRODUCTION COMPANY,
a Pennsylvania corporation;
et al.
                Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO
PROHIBIT DEFENDANTS FROM RELYING UPON *LEGGETT 2* AS
OPPOSED TO W.VA.CODE § 22-6-8(e), AS AMENDED BY SENATE BILL 360**

### I.    INTRODUCTION

For reasons expressed herein and in Plaintiffs' motion *in limine* (ECF Doc. No. 643), Plaintiffs respectfully submit that W.Va. Code § 22-6-8(e), as amended by Senate Bill 360, effective on May 31, 2018, applies to this case because amendments which clarify existing law, correct a misunderstanding of the law, or overrule a wrongly decided case do not violate the general rule against retroactive application of a statute. Moreover, even if applying the amended statute to this case could reasonably be construed as involving a retroactive application, such application would not be prohibited because the Contract Clauses of the United States and West Virginia Constitutions would not be violated by such amendment. For all of these reasons, and as further to be explained below, Defendants' contention in their response memorandum that Senate Bill 360 can only be applied prospectively is incorrect.

However, contrary to Defendants' assertion, Plaintiffs do not "acknowledge that *they* have already lost this issue before Judge Stamp." ECF Doc. No. 682, at p. 1 (citing Plaintiffs' motion *in limine*, at p. 17) (emphasis added). Rather, the *Fout* plaintiffs and their counsel failed to make any appropriate arguments or to cite any relevant caselaw to Judge Stamp. *See Fout, et al. v. EQT Production Company*, Civil Action No. 1:15CV68, Plaintiffs' Supplemental Brief and Response to Defendant's Motion in Limine Regarding Issues for Litigation Set Forth in Paragraph VIII of the Joint Pre-Trial Order (ECF Doc. No. 151), and Memorandum Opinion and Order Regarding Defendant's Motions in Limine (ECF Doc. No. 158), at pp. 18-20. Obviously, as an impartial and neutral Judge, Judge Stamp was not permitted to make arguments on behalf of litigants that were not raised or advanced by them. Only for the purpose of avoiding a plain error that would require reversal of a judgment, is a judge obligated to act where a party has not acted on its own behalf. Of course, in any event, Judge Stamp's ruling in *Fout* is not binding on this Court. *See*, *e.g.*, *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (Posner, J.) ("A single district court decision, however (especially one that cannot be appealed), has little precedential effect. It is not binding on the circuit, or even on other district judges in the same district." (citing *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987)).[1]

---

[1] Interestingly, Defendant EQT Production essentially made this same argument to Judge Stamp in its recent "Memorandum in Opposition to Plaintiffs' Motion to Reconsider Memorandum Opinion and Order Granting Defendants, EQT Corporation, EQT Energy LLC, EQT Investments Holdings, LLC, and EQT Midstream Partners, LP's Motion for Summary Judgment" (ECF Doc. No. 288), at p. 6, in *Leggett, et al. v. EQT Production Company, et al.*, Civil Action No. 1:13-cv-00004FPS (N.D.W.Va.) ("Nor does the Honorable John Preston Bailey's finding of an alter ego relationship among the EQT defendants in . . . ("Kay Company"), provide a basis to reconsider this Court's January 2016 Order. *The ruling in Kay Company is not final, and the defendants intend to appeal it once it is.* Further, the *Kay Company* decision does not constitute an intervening change in controlling law necessary for the reconsideration or amendment of a judgment in this case. *There is no reason to substitute Judge Bailey's ruling for the reasoning or findings of this Court – as Judge Bailey was not required to, and did not, substitute this Court's reasoning for his own.*" (emphases added)).

## II. STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

Plaintiffs rely upon their "Relevant Procedural History of *Leggett 1*,[2] *Leggett 2*,[3] and Senate Bill 360" set forth in their Motion *in Limine* (ECF 643), at pp. 2-7, as if fully set forth herein. However, in response to Defendants' "Statement of Facts and Relevant Procedural History" (ECF Doc. No. 682, at pp. 2-6), Plaintiffs additionally state the following:

As noted in Plaintiffs' Motion *in Limine*, the hearings before the Senate committees and the full Senate, while demonstrating a lack of understanding of the scope and limitations of the Contract Clause[4] and some confusion as to whether subsection (e) was intended to be prospective or retroactive, discussions during these hearings support that the intention of the amendment found in Senate Bill 360 was to clarify the Legislature's intention in response to the inconsistencies between *Leggett 1* and *Leggett 2* and the express invitation for legislative clarification set forth in *Leggett 2*. Defendants quote some of the discussions during these hearings wherein a few of the Senators noted their belief that the permit section of the statute being amended is prospective, rather than retroactive. However, Defendants fail to quote or note any of the discussions indicating that Senate Bill 360 was intended as a clarifying amendment.

During the first substantive hearing on Senate Bill 360 before the Senate Committee on Energy, Industry, and Mining, several discussions were had with representatives of mineral owners' associations stating the participants' understanding that the Bill was meant to clarify the Legislature's intention in response to the inconsistencies between *Leggett 1* and *Leggett 2* and the express invitation for legislative clarification set forth in *Leggett 2*. *Hearing on S. 360 Before the S. Energy, Indus. & Mining Comm.*, 2018 Leg., Reg. Sess. 29-31 (W.Va. Jan. 25, 2018), ECF Doc.

---

[2] *Leggett v. EQT Production Co.*, No. 16-0136, Slip Op. at p. 16 (W.Va. Nov. 17, 2016) (*Leggett I*).
[3] *Leggett v. EQT Production Co.*, 239 W.Va. 264, 274-76, 800 S.E.2d 850, 860-62 (2017) (*Leggett 2*).
[4] As discussed in great detail in Plaintiffs' Motion *in Limine*, the constitutional prohibition against enacting laws that impair existing contract rights is not absolute.

3

No. 682-1, at pp. 4-5, 7, 11-12. During a subsequent hearing held before the Senate Judiciary Committee on February 22, 2018, the following discussions occurred:

> SENATOR SMITH:[5] And who do you represent? I mean, you –
> MR MILLER: EQT Production company.
> \* \* \*
> SENATOR SMITH: . . . Do you know whether the Supreme Court when they ruled on the Leggett case the second time . . . didn't they ask the Legislature to clear the language up on that? Because I know they ruled against it the first time and had an election and then they ruled -- second time they ruled against -- or against the mineral owners. *But did they not ask us -- or say that the Legislature needs to clarify the law because it was unclear or whatever? Wasn't that -- wasn't that asked from our highest court, the Supreme Court, to take care of this problem?*
> MR. MILLER: I believe it and as I interpret it, they were telling -- they were saying, "As you've got the statute currently written, 'at the wellhead' is in the statute and it had meaning. If that's not what you intend -- if that's not what was the intent of the Legislature, then the Legislature needs to change it, that the Court can't do that."
> SENATOR SMITH: No, the Court couldn't.
> MR. MILLER: Right.
> SENATOR SMITH: *But they did say we needed to clarify* --
> MR. MILLER: If that's what your purpose is --
> SENATOR SMITH: Okay. I just --
> MR. MILLER: Yeah.
> SENATOR SMITH: *I'm thinking back and I thought I read that where the Court had asked the legislators -- because I'm sure that's probably the main reason for this bill*. . . .

*Hearing on S. 360 Before the S. Judiciary Comm.*, 2018 Leg., Reg. Sess. 47 (W.Va. Feb. 22, 2018)

ECF Doc. No. 682-2, at p. 9 (footnote and emphases added).

> SENATOR ROMANO: But when the lease was silent, the industry standard was not to deduct those expenses, correct?
> MR. MILLER: I don't believe – I wouldn't call it an industry standard.
> SENATOR ROMANO: That's what Tawney was about, where they got sued for $450 Million for deducting without telling people, didn't they? *And that's what Leggett was about, which was decided 6 months earlier one way and then reversed by new Court in the latest decision*.
> MR. MILLER: Correct.
> SENATOR ROMANO: Okay.
> MR. MILLER: And in the Court decision, Tawney, they said "'At the well,' we'll ignore that. But we can't ignore it when the Legislature says it."

---

[5] Senator Randy E. Smith is the Chair of the Senate Committee on Energy, Industry, and Mining.

> SENATOR ROMANO: And we're going to say something here hopefully today, but certainly post-production costs under Tawney it was clear that those deductions were being taken improperly and illegally. And in Leggett one, they were being taken improperly and illegally because then you had to reimburse those people. Now, in the absence of any legislative action, the Court's reversed itself and said you can deduct them, *but they've invited us to straighten it out one way or the other*. That's a pretty good summary, huh?
>
> MR. MILLER: *They said if you didn't mean, "at the wellhead," then you should change the statute*.
>
> SENATOR ROMANO: And -- exactly. *And I think that's what we're trying to do*. Thank you, sir.

*Id.*, ECF Doc. No. 682-2, at p. 14 (emphases added).

> When the Bill was sent to the Senate Floor for a vote, Senator Trump stated, in part:
>
>> So that legislation, because of the way it was worded, it called for a royalty of 1/8th "at the wellhead," is the language that's used -- was used in that statute. And so that language and the meaning of it was the subject of litigation -- actually two decisions by our State Supreme Court of Appeals. One last year and in the case of Leggett versus EQT. And then a re-hearing, re-decision -- I think that was early this year.
>>
>> So in that decision, the West Virginia --in the more recent decision, the West Virginia Supreme Court of Appeals interpreted that phrase, "at the wellhead," to permit the deduction of post-production expenses from a lessor's royalty, under those old flat-rate leases.
>>
>> Under this bill, then, that would be changed. Under this bill, the language of the statute would be revised . . . .
>>
>> So if -- *if this legislation becomes law, in my opinion, it will have the effect or consequence of nullifying the recent -- the more recent Supreme Court decision in Leggett* and at least prospectively -- I think its application will be prospective because the whole permit prohibition is maintained in the bill.
>>
>> * * *
>>
>> . . . But in that circumstance, *the passage of this bill would, in my opinion, reverse or nullify, redefine the outcome of the second Leggett decision*.

*Hearing on S. 360*, 2018 Leg., Reg. Sess. 6 (W.Va. Feb. 28, 2018) ECF Doc. No. 682-3, at p. 3

(emphases added).

### III.  ARGUMENT

**A. Because Senate Bill 360 Clarifies Existing Law, Corrects a Misunderstanding of the Law, and/or Overrules a Wrongly Decided Case, Applying It To Pending Cases Does Not Violate the General Rule Against Retroactive Application of a Statute**

5

### 1. Discussion of West Virginia Canons of Statutory Construction and Relevant Decisions

Plaintiffs do not dispute that a federal district court sitting with diversity jurisdiction should utilize state canons of statutory construction when interpreting a state statute to the extent that such state canons are in conflict with federal canons of statutory construction. However, research of state decisions do not reflect any true conflict between those canons of statutory construction recognized by the West Virginia Supreme Court of Appeals and those utilized by the Fourth Circuit. Indeed, West Virginia state court decisions, too numerous to mention, cite or quote from federal cases (presumably as persuasive authority) discussing relevant canons of statutory construction.

### (a) The holding of *Findley* relied upon by the Defendants should not be utilized to prohibit the application of Senate Bill 360 to pending cases

Despite the frequent citation or quotation in West Virginia cases to federal decisions and canons of statutory construction, in an attempt to distinguish the federal cases previously relied upon by Plaintiffs, Defendants cite *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002), as a decision wherein the West Virginia Supreme Court of Appeals refused to retroactively apply an alleged clarifying amendment. But Defendants fail to note that at least two other decisions of that Court support retroactively applying clarifying amendments to pending cases. *Brown v. Crum*, 184 W.Va. 352, 400 S.E.2d 596 (1990); *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 569, 396 S.E.2d 737, 750 (1990).

As explained by that Court in *Brown v. Crum*,

> A second issue presented in this appeal involves the retroactive application of the 1988 amendments. *The appellants contend that the 1988 amendments were provided as clarification of the legislature's original intent to preclude set-offs. The appellants further argue that the amendments merely clarify and emphasize what has always been the public policy of West Virginia with regard to underinsured*

6

> *motorist coverage. Consequently, they contend that the amendments must be considered remedial in nature and must be applied retroactively to govern the resolution of the present case.*
>
> We have consistently held that a statute may be applied retroactively if it is remedial in nature. *See Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980). In *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990), we encountered issues similar to those presented in this case. In *Youler, the insurer had contended that the 1988 amendments to W.Va.Code § 33-6-31(b) indicated a "change in the law*, so that prior thereto, ... the statute allowed a setoff of the tortfeasor's liability insurance coverage against the injured person's underinsured motorist coverage limits." 183 W.Va. at 569, 396 S.E.2d at 750. *We disagreed with the contentions of the insurer in Youler and stated that the "1988 additions ... constitute only a clarification of the legislature's original intent to preclude ... setoff[s]...." Id.*
>
> \* \* \*
>
> In the present case, we reemphasize that W.Va.Code § 33-6-31(b) precludes offsets of amounts paid by a tortfeasor's insurer against the underinsured motorist policy limits of an insurance carrier. *This preclusion of offsets was the public policy of this state prior to the 1988 amendments which explicitly added such language to W.Va.Code § 33-6-31(b). Consequently, the 1988 amendments are to be applied retroactively to govern the resolution of the present controversy.* We find Allstate's arguments to the contrary meritless.

*Brown v. Crum*, 184 W.Va. at 354-55, 400 S.E.2d at 598-99 (emphases added).

In *Findley*, the court failed to cite *Crum* and, while it did cite *Youler*, it failed to acknowledge this particular holding of *Youler*. *See Findley*, 213 W.Va. at 99, 576 S.E.2d at 826.

To reach its conclusion, the *Findley* Court relied upon the well-recognized principle that

> "[a] statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application." Syllabus Point 2, *Public Citizen, Inc. v. First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996).
>
> Syl. pt. 2, *Smith v. West Virginia Div. of Rehabilitative Servs. & Div. of Pers.,* 208 W.Va. 284, 540 S.E.2d 152 (2000).

*Findley*, 213 W.Va. at 93, 576 S.E.2d at 820.

Based upon such principle, the Court then reasoned:

> In the case *sub judice,* the legislative amendments to W. Va.Code §§ 33–6–

7

> 30(b–c) are most certainly substantive in nature. The effect of such amendatory language is to extinguish any litigable rights that have accrued as a result of this Court's holding in *Mitchell v. Broadnax,* 208 W.Va. 36, 537 S.E.2d 882 (2000), and to foreclose lawsuits that have been initiated as a result thereof. However, absent explicit statutory language or a clear expression of legislative intent that such amendments are to apply retroactively, we are directed, by the Legislature, itself, to afford them prospective only application. *See* W. Va.Code § 2–2–10(bb). *See also Hughes v. Washington,* 389 U.S. 290, 296–97, 88 S.Ct. 438, 442, 19 L.Ed.2d 530, 535–36 (1967) (Stewart, J., concurring) ("[A] State cannot be permitted to defeat the constitutional prohibition against taking property without due process of law by the simple device of asserting retroactively that the property it has taken never existed at all."); *Mildred L.M. v. John O.F.,* 192 W.Va. 345, 351 n. 10, 452 S.E.2d 436, 442 n. 10 (1994) ("It has been stated repeatedly that new legislation should not generally be construed to interfere with existing contracts, rights of action, suits, or vested property rights." (emphasis and citation omitted)); *State v. Hensler,* 187 W.Va. 81, 83, 415 S.E.2d 885, 887 (1992) (per curiam) ("[D]ue process places a limitation on retroactive judicial application of statutory enactments which precludes the court from effecting a result which the legislature is barred from achieving as a result of the *ex post facto* prohibition." (citation omitted)). Accordingly, we disagree with the circuit court's ruling to the contrary.

*Findley*, 213 W.Va. at 93-94, 576 S.E.2d at 820-21 (footnote omitted).

The primary flaw in the *Findley* Court's logic was its failure to recognize the purpose and effect of clarifying amendments as recognized in its own prior decisions in *Crum* and *Youler*. To state it more distinctly, a clarifying amendment does not eliminate substantive rights or augment substantive liabilities concerning completed events but rather clarifies what the law and public policy always had been. The fact that such an amendment corrects a misunderstanding of the law or overrules a court decision which contained such misunderstanding does not remove the amendment from the realm of clarifying amendments because those are two of the recognized reasons necessitating a clarifying amendment by a legislature. *See, e.g., Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004); *Whiting v. The Johns Hopkins Hosp.*, 416 Fed. Appx. 312, at *2 (4th Cir. 2011); *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 506-07 (3d Cir. 2008); *Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272, 1283-84 (11th Cir.1999); *First Nat. Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 478-80 (7th Cir. 1999); *Leshinsky v. Telvent GIT, S.A.*, 873

F. Supp.2d 582 (S.D.N.Y. 2012).

Moreover, for those reasons addressed in Plaintiffs' Motion *in Limine* (ECF Doc. No. 643, at pp. 11-15), the enforcement of the public policy set forth in W.Va.Code §22-6-8 does not constitute a substantial impairment of the parties pre-existing contracts, and, accordingly, no violation of the federal and state Contracts Clauses occur. *Energy Reserves Group*, 459 U.S. at 411 ("state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment"; upholding regulation of the price of natural gas sold at the wellhead); *Shell*, 380 S.E.2d at 188 (same, quoting *Energy Reserves Group*). *Accord Exxon Corp. v. Eagerton*, 462 U.S. 176, 190 (1983) (upholding regulations exempting royalty owners from natural gas severance tax increase and prohibiting producers from passing increase to consumers; explaining that statute does not violate the Contracts Clause "simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." ); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 31 (1977); *City of El Paso v. Simmons*, 379 U.S. 497, 515 (1965) ("Laws which restrict a party to those gains reasonably to be expected from the contract are not subject to attack under the Contract Clause, notwithstanding that they technically alter an obligation of a contract.") Therefore, the prohibitions set forth in cases relied upon by the *Findley* Court such as *Hughes v. Washington*, 389 U.S. at 296–97, and *Mildred L.M. v. John O.F.,* 192 W.Va. at 351 n. 10, 452 S.E.2d at 442 n. 10, are not violated.

Lastly, in regard to this particular holding of *Findley* which is relied upon by Defendants, it should be noted that this is not a case where the parties are litigating issues concerning leases created by permits issued after the decision in *Leggett 2* but before the adoption of Senate Bill 360. Rather, all of the converted leases at issue in this civil action were created long before the decision

in *Leggett 2*, and none of the parties are having any litigable rights that have accrued as a result of their reliance upon such decision extinguished as a result of Senate Bill 360. *See Findley*, 213 W.Va. at 93-94, 576 S.E.2d at 820-21. Rather, all relevant completed events and reasonable expectations or reliance of the parties at issue in this lawsuit occurred long before the decision in *Leggett 2* which necessitated the need for the clarifying amendment.

For all of these foregoing reasons, the holding of *Findley* relied upon by the Defendants should not be utilized to prohibit the application of Senate Bill 360 to pending cases.

> **(b) The *Findley* Court's Holding Concerning When Judicial Decisions Should Not Be Applied Retroactively to Pending Cases Establishes that the Decision in *Leggett 2* Should Not Apply to this Case**

Interestingly, the *Findley* Court held that its decision in *Mitchell v. Broadnax,* 208 W.Va. 36, 537 S.E.2d 882 (2000), could only be applied to litigation concerning exclusions that were incorporated into insurance contracts between its issuance and the adoption of the statutory amendment nearly two and one-half years later which was enacted to overturn it. After discussing the relevant facts and procedural history of the case and the factors relevant to determining whether a judicial decision should be retroactively applied to pending cases, *see* Syl. pt. 5, *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), the Court held:

> Applying these criteria to our holdings in *Mitchell v. Broadnax,* we conclude that our decision in *Mitchell* should not be applied retroactively to permit the prosecution of Ms. Findley's claim thereunder. In short, retroactivity is not warranted because our decision in *Mitchell involved a matter of substantive law, namely W. Va.Code § 33–6–31(k), which had, prior to our decision therein, received sparse treatment in our judicial decisions and had not been amended by the Legislature since its original enactment in 1979. Given this dearth of interpretive authority, it goes without saying that the holdings we announced in Mitchell were "not clearly foreshadowed."* Syl. pt. 5, in part, *Bradley,* 163 W.Va. 332, 256 S.E.2d 879. Furthermore, the substantial public policy issues implicated in our holdings, and explicitly identified by the Legislature in W. Va.Code § 33–6–30(b), mitigate in favor of a rule of prospectiveness. *See id.* Finally, as noted above, while we long have held exclusions in insurance policies to be valid, we had not, prior to *Mitchell,* delineated the express requirements therefor contained in W.

> Va.Code § 33–6–31(k).
>
> Thus, for the same reasons we declined to apply W. Va.Code §§ 33–6–30(b–c) retroactively in order to safeguard the substantive rights of insureds that had accrued before its passage, we likewise decline to apply our holdings in *Mitchell v. Broadnax* retroactively in order to shield insurers *from the imposition of augmented substantive liabilities that did not clearly exist prior to the announcement of such holdings*. *See* Syl. pt. 2, *Smith,* 208 W.Va. 284, 540 S.E.2d 152. Having found *Mitchell* to have prospective only application, it is imperative to explain how this decision interplays with our previous conclusion that W. Va.Code § 33–6–30 also has only prospective application. Therefore, we hold as a matter of law, that the holdings of *Mitchell v. Broadnax,* 208 W.Va. 36, 537 S.E.2d 882 (2000), which allow insureds to pursue a cause of action against insurers to enforce the requirements of W. Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996), apply only to those exclusions to insurance coverage incorporated into policies of motor vehicle insurance on or after the effective date of our decision therein, *i.e.,* February 18, 2000, and before the effective date of the Legislature's amendments to W. Va.Code § 33–6–30 (2002) (Supp.2002), *i.e.,* June 5, 2002.

*Findley*, 213 W.Va. at 96-97, 576 S.E.2d at 823-24 (emphases added; footnotes omitted).

Similarly, in the present case, the decision in *Leggett 2* involved substantive law, namely W.Va.Code § 22-6-8, which had prior thereto, received no substantive treatment in the court's judicial decisions, let alone sparse treatment, since its original enactment in 1982. "Given this dearth of interpretive authority, it goes without saying that the holdings [the court] announced in [*Leggett 2*] were 'not clearly foreshadowed.'" *Findley*, 213 W.Va. at 96, 576 S.E.2d at 823 (quoting Syl. pt. 5, in part, *Bradley,* 163 W.Va. 332, 256 S.E.2d 879. Indeed, as noted in Plaintiffs' Motion *in limine*, the only decision from the West Virginia Supreme Court of Appeals which the Defendants had to offer guidance as to what "at the wellhead" language meant in connection with whether it permitted the deduction of post-production expenses was *Tawney v. Columbia Natural Resources, L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006). While Defendants may attempt to argue that they construed the nearly identical language in the statute differently from that in privately negotiated leases due to different canons of construction, certainly, at least prior to the *Leggett 2*

decision,[6] it would have behooved any reasonable lessee to heed and respect the holdings of the Court in *Tawney*. ECF Doc. No. 643, at p. 14.

Indeed, as to leases converted under the statute, the Plaintiffs brought this action relying upon the holding in *Tawney* and the same or substantially similar language of W.Va.Code §22-6-8(e). Indeed, the court's holding in *Leggett 1* confirmed the Plaintiffs' beliefs and reliance. *Leggett 2* was an anomalous, political decision which should never have been issued. As explained by Justice Davis in her dissenting opinion, there was no legal basis to grant a rehearing under Rule 25 of the West Virginia Rules of Appellate Procedure.[7] *Leggett v. EQT Production Co.*, 239 W.Va. 264, 285-86, 800 S.E.2d 850, 871-72 (2017) (*Leggett 2*) (Davis, J., dissenting).

Additionally, if, contrary to the arguments of Plaintiffs, the public policy announced by the legislature in W.Va.Code §22-6-8 does not justify its retroactive application due to the federal and state Contract Clauses, then, just as in *Findley*, such public policy must mitigate in favor of a rule of prospectiveness. *See Findley*, 213 W.Va. at 96, 576 S.E.2d at 823. Certainly, Defendants "cannot have their cake and eat it too."

### B. Senate Bill 360 Does Not Attach New Legal Consequences to Events Completed Before Its Enactment

Because cases such as *Crum*, *supra*, and *Youler*, *supra*, establish that West Virginia state courts do follow the canon of statutory construction that permits clarifying amendments to be

---

[6] Of course, as argued by the Plaintiffs in *Leggett 1* and *Leggett 2*, and found by the court in *Leggett 1*, the same definition of "ambiguous" applies to both language in contracts and statutes. And, while a contract, unlike a statute, will be strictly construed against its drafter, a remedial statute will be liberally construed in favor of those whom it seeks to benefit; thus, presumably leading to much the same result.

[7] Moreover, some courts have expressly held that a newly elected justice should not be permitted to vote on a petition for rehearing concerning a decision rendered before the election. 5 C.J.S. *Appeal and Error* § 799 (citing *Glasser v. Essaness Theatres Corp.*, 346 Ill. App. 72, 104 N.E.2d 510 (1st Dist. 1952), *judgment aff'd*, 414 Ill. 180, 111 N.E.2d 124 (1953); *Gas Products Co. v. Rankin*, 63 Mont. 372, 207 P. 993, 1000 (1922); *Golden Valley County v. Greengard's Estate*, 69 N.D. 171, 284 N.W. 423 (1938)).

applied to pending cases, it is not improper for the parties or this Court to examine federal decisions which discuss such canon in more detail. As previously noted in Plaintiffs' Motion *in Limine*, the United States Court of Appeals for the Fourth Circuit has held:

> *We note at the outset that when an amendment alters, even "significantly alters," the original statutory language, this does "not necessarily" indicate that the amendment institutes a change in the law. Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir.1999) (internal quotation marks and citation omitted); *accord Wesson v. United States,* 48 F.3d 894, 901 (5th Cir.1995) (noting that "an amendment to a statute does not necessarily indicate that the previous version was the opposite of the amended version"). Certainly, Congress *may amend a statute to establish new law, but it also may enact an amendment "to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases." United States v. Sepulveda,* 115 F.3d 882, 885 n. 5 (11th Cir.1997) (internal quotation marks and citation omitted). As we have explained, a "change[ ] in statutory language need not *ipso facto* constitute a change in meaning or effect. Statutes may be passed purely to make what was intended all along even more unmistakably clear." United States v. Montgomery County,* 761 F.2d 998, 1003 (4th Cir.1985).

*Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (emphases added). *Accord, e.g., Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 506-07 (3d Cir. 2008) ("we do not take the fact that an amendment conflicts with a judicial interpretation of the pre-amendment law to mean that the amendment is a substantive change and not just a clarification. As we explained . . ., 'one could posit that quite the opposite was the case—that the new language was fashioned to clarify the ambiguity made apparent by the caselaw.'" (citation omitted)).

As more fully explained by the Eleventh Circuit in *Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272 (11th Cir.1999),

> *Moreover, concerns about retroactive application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to clarify relevant law rather than effect a substantive change in the law. See Beverly Community Hosp. Ass'n v. Belshe,* 132 F.3d 1259, 1265 (9th Cir.1997), *cert. denied,* 525 U.S. 928, 119 S.Ct. 334, 142 L.Ed.2d 276 (1998); *Liquilux Gas Corp. v. Martin Gas Sales,* 979 F.2d 887, 890 (1st Cir.1992); *Boddie v. American Broadcasting Cos.,* 881 F.2d 267, 269 (6th Cir.1989); *cf. Tsui Yuan Tseng,* 525 U.S. at ——, 119 S.Ct. at 667–68 . . . In effect, the court applies the law as set forth in

> the amendment to the present proceeding because the amendment accurately restates the prior law. *See Liquilux,* 979 F.2d at 890 ("Clarification, effective *ab initio,* is a well recognized principle.").
>
> Several factors are relevant when determining if an amendment clarifies, rather than effects a substantive change to, prior law. *A significant factor is whether a conflict or ambiguity existed with respect to the interpretation of the relevant provision when the amendment was enacted. If such an ambiguity existed, courts view this as an indication that a subsequent amendment is intended to clarify, rather than change, the existing law*. *See Liquilux,* 979 F.2d at 890. Second, courts may rely upon a declaration by the enacting body that its intent is to clarify the prior enactment. *See id.* Courts should examine such declarations carefully, however, especially if the declarations are found in the amendment's legislative history rather than the text of the amendment itself. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980). As a general rule, "[a] mere statement in a conference report of [subsequent] legislation as to what the Committee believes an earlier statute meant is obviously less weighty" than a statement in the amendment itself. *Id.; see also Pennsylvania Med. Soc'y v. Snider,* 29 F.3d 886, 900 (3d Cir.1994) . . . . *Declarations in the subsequent legislative history nonetheless may be relevant to this analysis*, especially if the legislative history is consistent with a reasonable interpretation of the prior enactment and its legislative history. *See Sykes v. Columbus & Greenville Ry.,* 117 F.3d 287, 293–94 (5th Cir.1997) . . . .

*Piamba Cortes v. American Airlines, Inc.*, 177 F.3d at 1283-84 (emphases added). *Accord Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp.2d 582, 590-91 (S.D.N.Y. 2012).

While the express language of W.Va. Code § 22-6-8(e), as amended by Senate Bill 360, does not state that it is clarifying existing law in light of *Leggett 1* and *Leggett 2* or overruling *Leggett 2*, the fact that this was the intention of the Legislature is supported by the following factors: (1) the inconsistent rulings reached in *Leggett 1* and *Leggett 2* in 2016 and 2017; (2) the express invitations in *Leggett 2* for the Legislature to clarify its intention in such regard; (3) the introduction of Senate Bill 360 in the very next regular legislative session; (4) the Note contained in Senate Bill 360 that "[t]he purpose of this bill is to clarify the royalty owed to a royalty owner in an oil and gas lease"; and (5) statements made to such effect in the legislative discussions of Senate Bill 360, as quoted above. These factors when considered together are more than sufficient

to demonstrate that it was the intent of the Legislature in adopting Senate Bill 360 to clarify existing law, correct a misunderstanding of the law, and/or overrule a wrongly decided case.

### C. Contract Clauses Are Not Violated by Application of Amendment to Pending Cases

Because Defendants' Response does not raise any argument which is not adequately addressed in Plaintiffs' Motion *in Limine*, Plaintiffs adopt and incorporate their argument and discussion of such issues herein as if fully set forth below, rather than repeating such arguments. ECF Doc. No. 643, at pp. 11-17.

### Conclusion

For all of the foregoing reasons, as well as those set forth in their motion, Plaintiffs respectfully request that Your Honorable Court grant their motion *in limine* to prohibit Defendants from relying upon *Leggett v. EQT Production Co.*, 239 W.Va. 264, 274-76, 800 S.E.2d 850, 860-62 (2017) (*Leggett 2*), as opposed to W.Va. Code § 22-6-8(e), as amended by Senate Bill 360 which became effective on May 31, 2018.

                                                 THE KAY COMPANY, LLC, WILLIAM CATHER, Trustee of Diana Goff Cather Trusts, and JAMES E. HAMRIC III, and all other persons and entities similarly situated,

                                                 By Counsel

/s/ *Richard A. Monahan*

| | |
|---|---|
| Marvin W. Masters | Michael W. Carey |
| West Virginia State Bar No. 2359 | West Virginia State Bar No. 635 |
| Richard A. Monahan | Carey, Scott, Douglas & Kessler, PLLC |
| West Virginia State Bar No. 6489 | 707 Virginia Street East, Suite 901 |
| April D. Ferrebee | Charleston, West Virginia 25301 |
| West Virginia State Bar No. 8034 | |
| The Masters Law Firm lc | |
| 181 Summers Street | |
| Charleston, West Virginia 25301 | |

Counsel for Plaintiffs
F:\5\903\b073-mol002Reply.docx

## CERTIFICATE OF SERVICE

I, Richard A. Monahan, hereby certify that on November 8, 2018, I electronically filed "Plaintiffs' Reply in Support of Motion *in* Limine to Prohibit Defendants from relying upon *Leggett 2* as Opposed to W.Va.Code §22-6-8(e), as Amended by Senate Bill 360" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

>David K. Hendrickson
>Carl L. Fletcher, Jr.
>Hendrickson & Long PLLC
>214 Capitol Street
>Post Office Box 11070
>Charleston, West Virginia  25339
>daveh@handl.com
>cfletcher@handl.com
>Counsel for Defendants

>/s/ *Richard A. Monahan*
>Marvin W. Masters
>West Virginia State Bar No. 2359
>Richard A. Monahan
>West Virginia State Bar No. 6489
>April D. Ferrebee
>West Virginia State Bar No. 8034
>The Masters Law Firm lc
>181 Summers Street
>Charleston, West Virginia  25301
>mwm@themasterslawfirm.com
>ram@themasterslawfirm.com
>adf@themasterslawfirm.com