IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE KAY COMPANY, LLC,
WILLIAM CATHER, Trustee
of Diana Goff Cather Trusts,
and JAMES E. HAMRIC III,
and all other persons and
entities similarly situated,

        Plaintiffs,

v.                                          Case No. 1:13-CV-151
                                           Honorable John Preston Bailey

EQT PRODUCTION COMPANY,
a Pennsylvania corporation;
et al.
        Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE SETTLEMENT OF THIS CLASS ACTION AND ENTRY OF SCHEDULING ORDER INCLUDING THE FINAL HEARING TO APPROVE SETTLEMENT**

      Plaintiffs, The Kay Company, LLC, William Cather, and James E. Hamric III, as class representatives in the above class action, move the Court[1] to: (1) preliminarily approve the settlement reached in the above styled class action; (2) reappoint the notice expert and class settlement administrator for settlement notice and class administration;[2] (3) approve the settlement notice; and (4) schedule the Final Hearing dates for exclusion and other matters necessary for the Court's review and consideration of proper notice to the class and determination of whether the settlement is in the best interest of the class.

      **History of the Litigation and Settlement Negotiations**

      1.      On January 16, 2013, Plaintiff Class Representatives, by counsel filed their Complaint in Civil Action No. 13-C-2 in the Circuit Court of Doddridge County, West Virginia,

---

[1] A proposed Order is attached.
[2] *See* Doc 497, Order approving class notice plan and appointing administrator.

against the EQT Defendants seeking, among other things, damages for alleged improper deductions of post-production expenses from their royalty payments and damages for breach of lease agreements, alleged breach of fiduciary duty, alleged fraud, alleged violations of the flat rate royalty statute (W. Va. Code § 22-6-8) and the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, et seq.), and for punitive damages, all related to the alleged improper payment of royalties.

2. EQT removed this case to the United States District Court for the Northern District of West Virginia on May 31, 2013, as Civil Action No. 1:13-CV-151, and filed its answer and asserted affirmative defenses denying liability.

3. Plaintiff Class Representatives filed their Amended Complaint on May 9, 2014, adding various allegations, to which EQT filed another answer and asserted affirmative defenses denying liability.

4. After class discovery, the plaintiffs filed their motion for class certification on September 30, 2016, which the defendants opposed. After briefing by all Parties, the Court found a class action appropriate under F.R.C.P. 23(b)(3) and ordered that the following class be certified as a F.R.C.P. Rule 23(b)(3) class action on September 6, 2017.[3]

---

[3] There was excepted from this class those lessors whose lease interests were acquired by EQT in purchases of stock, mergers or asset purchases of Stone Energy, Republic Energy, Trans Energy, and Statoil as set forth more specifically in the transactions set forth below:

- a. Purchase and Sale Agreement by and between Statoil USA Onshore Properties, Inc., as seller, and EQT Production Company, as buyer, dated April 20, 2016.

- b. Purchase and Sale Agreement by and among Republic Energy Ventures, LLC, Republic Partners VI, LP, Republic Partners VII, LLC, Republic Partners VIII, LLC, and Republic Energy Operating, LLC, collectively as sellers, and EQT Production Company, as buyer, dated October 24, 2016.

- c. Agreement and Plan of Merger by and among Trans Energy, Inc., EQT Corporation, and WV Merger Sub, Inc., dated October 24, 2016.

WHEREAS, the Court therefore certified the following classes:

All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their natural gas or mineral estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period.) (See exception below.)

> Subclass A - All EQT natural gas lessors with flat rate leases converted by operation of W. Va. Code, § 22-6-8 and that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period.).

> Subclass B - All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period,) and whose leases do not permit the deduction of post- production expenses under *Tawney,* except for those lessors holding flat rate leases converted according to W. Va. Code, §22-6-8.

> Subclass C - All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period,) and whose leases do permit the deduction of postproduction expenses under *Tawney,* except for those lessors holding flat rate leases converted according to W. Va. Code, §22-6-8.

There would be excepted from the class the officers and agents of any defendant or subsidiary of any defendant named in this lawsuit or any lawsuit involving the same or similar claims as those alleged in this lawsuit; any attorney for any such defendant; any attorney for any plaintiff in this lawsuit or in any lawsuit involving the same or similar

---

d.   Purchase and Sale Agreement by and between Stone Energy Corporation, as seller, EQT Production Company, as buyer, and EQT Corporation, as buyer parent, dated February 9, 2017.

Therefore, the notice will not be sent to those lessors and the published notice and the website will clearly state that the lessors of the above acquired leases are not members of this class.

claims as those alleged in this lawsuit against any such defendant; and any judicial officer who presides over this lawsuit or over any other lawsuit involving the same or similar claims as those alleged in this lawsuit against any such defendant.

5. The Court certified the class and appointed Marvin W. Masters and the Masters Law Firm LC and Michael W. Carey and the law firm of Carey, Scott, Douglas & Kessler, PLLC as Class Counsel and appointed the individual plaintiffs, The Kay Company, LLC, William Cather, Trustee of Diana Goff Cather Trusts and James E. Hamric, III, as class representatives for and on behalf of the Class.

6. The Parties engaged in exhaustive discovery over the five (5) years of litigation up to and including the conclusion of expert depositions on November 20, 2018.[4]

7. The trial of this case was scheduled to begin on November 27, 2018. All pretrial motions were filed, briefed and ruled upon by the date of the Pretrial Conference and Hearing on November 15, 2018, including Defendants' Motions for Summary Judgement filed in August 2018.

8. The parties began preliminary discussions with respect to settlement after the Court ruled on pretrial motions at the pretrial in Wheeling, West Virginia on November 15, 2018.[5] Thereafter the parties scheduled a formal mediation in Pittsburgh, Pennsylvania to occur on November 19, 2018, before Joseph Selep, an experienced trial counsel and mediator of civil actions.[6] That mediation failed to resolve the case. However, the parties continued to mediate through the mediator from day to day with the trial to begin on Tuesday, November 27, 2018. The

---

[4] As noted in the official comments to the 2018 amendment to Rule 23(e)(2), "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Comments, Fed.R.Civ.P.23(e)(2)(A) & (B) (2018).

[5] The Court reserved ruling on certain motions including admissibility of some of defendants' expert testimony.

[6] As also noted in the official comments to the 2018 amendment to Rule 23(e)(2), "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Comments, Fed.R.Civ.P.23(e)(2)(A) & (B) (2018).

parties reached a tentative settlement on some of the important terms on November 23, 2018, and informed the Court through the mediator. The Court then continued the trial to December 17, 2018. The Parties continued to mediate with the mediator until Monday, December 10, 2018, when they confirmed additional terms and agreement as to the "Settlement Terms" signed by counsel of all Parties. The parties then undertook negotiations with respect to a final settlement agreement. Mediation, therefore, continued from day to day, including mediation at offices in Wheeling, West Virginia and at the United States District Court in Wheeling in December with the Final Settlement Agreement terms being agreed to and signed by counsel for all parties on January 30, 2019.

**A.      Argument and Authorities**

Rule 23(e) of the Federal Rules of Civil Procedure, as amended effective December 1, 2018, provides, in pertinent part:

> **(e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class**--or a class proposed to be certified for purposes of settlement--**may be settled, voluntarily dismissed, or compromised only with the court's approval**. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> **(1)** *Notice to the Class.*
>
> **(A)** *Information That Parties Must Provide to the Court.* **The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.**
>
> **(B)** *Grounds for a Decision to Give Notice.* **The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:**
>
> **(i) approve the proposal under Rule 23(e)(2)**; and
>
> **(ii)** certify the class for purposes of judgment on the proposal.[7]

---

[7] The 2018 Amendment to Rule 23(e) and the official comments thereto make clear that the Subdivision applies both to proposed class settlements in cases which have already been certified as class actions for litigation purposes and to proposals to certify a class for settlement purposes only.  However, as made clear in the Rule and its comments the Court's notice to the class and ultimate approval is more limited in those cases which have already been certified as a

5

**(2) *Approval of the Proposal.*** If the proposal would bind class members, **the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:**

**(A) the class representatives and class counsel have adequately represented the class;[8]**

**(B) the proposal was negotiated at arm's length;**

**(C) the relief provided for the class is adequate, taking into account:**

**(i) the costs, risks, and delay of trial and appeal;**

**(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;**

**(iii) the terms of any proposed award of attorney's fees, including timing of payment; and**

**(iv) any agreement required to be identified under Rule 23(e)(3); and**

**(D) the proposal treats class members equitably relative to each other.[9]**

 **(3) *Identifying Agreements.*** The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4) *New Opportunity to be Excluded.*** If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an

---

class action for litigation purposes.  For instance, the comments regarding Rule 23(e)(1) provide, in relevant part: "If the court has already certified a class, **the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.** But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record."  Comments, Fed.R.Civ.P. 23(e)(1) (emphasis added).

[8] As noted in the official comments to the 2018 amendment to Rule 23(e)(2), "[i]f the court has appointed class counsel or interim class counsel, it will have made an initial evaluation of counsel's capacities and experience.  But the focus at this point is on the actual performance of counsel acting on behalf of the class."  Comments, Fed.R.Civ.P. 23(e)(2)(A) & (B) (2018).

[9] Because many Circuits have established lists of numerous factors that may be relevant to determining whether a class settlement is fair, reasonable, and adequate--some or many of which "may not be relevant to a particular case or settlement proposal" and, therefore, create the potential for "distracting attention from the central concerns that inform the settlement-review process"—the 2018 amendment to Rule 23(e)(2) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal."  Comments, Fed.R.Civ.P. 23(e)(2) (2018).

      earlier opportunity to request exclusion but did not do so.

* * *

Fed.R.Civ.P. 23(e) (2018) (bolded-only emphases added; footnotes added).

      Judicial approval of settlements is necessary to ensure that the rights of absent class members are adequately protected. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991). Courts apply a two-step approach to the settlement approval process. *Smith v. Res-Care, Inc.*, 2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 2d 825, 827 (E.D.N.C. 1994). In the first step, preliminary approval, the court reviews the proposed settlement for obvious deficiencies, schedules a fairness hearing and provides the class with notice of the proposed settlement and hearing. In the second step, the court considers final approval of the proposed settlement at a formal fairness hearing during which arguments and evidence may be presented in support of and in opposition to the settlement. *Id*. At the later fairness hearing, the Court will be asked to consider, in an in-depth fashion, whether the proposed settlement is fair, reasonable and adequate. *Smith*, 2015 WL 6479658 at *4.

      A Court should direct class notice and schedule a hearing to consider final approval of a class settlement, if it determines that a proposed settlement is within the range of what might ultimately be found fair, reasonable and adequate. *Jiffy Lube*, *supra*; *see also In re Corrugated Containing Antitrust Litigation*, 643 F.2d 195, 205 (5th Cir. 1981) (noting that district court granted preliminary approval and held that "these settlements are within the range of possible approval"); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975). In evaluating whether the settlement falls within the range of possible approval, the Court's function should not be to second-guess the settlement's terms. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). Rather, the Court's focus should be on the terms of the settlement, not what might have been. When a proposed settlement appears

7

to fall within the range of possible approval, it is appropriate to issue preliminary approval and direct notice to the members of the settlement class. *See Horton*, 855 F. Supp. 2d at 827-28; *see also Manual*, *supra*, §§ 21.632, 21.633.

Rule 23 (e)(2) requires the ultimate finding that the settlement is "fair, reasonable and adequate." The goal of preliminary approval is for a Court to determine whether notice of the proposed settlement should be sent to the class. The standard therefore that applies at the preliminary approval stage is "less demanding" than at the final approval stage. Rubestein, 4 **Newburg on Class Actions** §13:13 (5th ed.). In assessing the <u>fairness</u> of a proposed settlement, the following factors are considered: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been concluded; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length, non-collusive negotiations. Courts look to the procedural posture of the case at settlement for indications that the agreement is the product of legitimate arms-length negotiations. Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length. Courts also find an absence of collusion when settlement negotiations are conducted by a third party.[10] Rubestein, 4 **Newburg on Class Actions** §13:14 (5th ed.).

Here, the proposed settlement falls within the range of possible approval as measured by adequacy factors considered within the Fourth Circuit. *Jiffy Lube*, 927 F.2d at 159; *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 239 (S.D.W.Va. 2005). In assessing the <u>adequacy</u> of the

---

[10] In this case the mediation took place through an independent mediator; a third-party.

settlement, the following factors are considered: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgement; and (5) the degree of opposition to the settlement. *Hoskins v. AB Resources, LLC*, 2014 WL 12755817 (US Dist. Ct. N.D.W. Va. 2014); *Serzone Products Liability Litigation*, 231 F.R.D. 221, 243-245 (US Dist. Court S.D. W.Va. 2005); *Smith v. Res-Care, Inc.*, 2015 WL 6479658 at *5-*7 (US Dist. Ct. S.D. W.Va.) (2015); *Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-159 (4th Cir. 1991).

In exercising its discretion, a trial court may limit its approval hearing to what is necessary to make "an informed, just, and reasonable decision." at 828 *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825 at 827-828 (E.D.N.C. 1994) (citations omitted). The approval of a class action settlement is committed to the sound discretion of the district court to determine the reasonableness of the settlement on a "case-by-case basis, in light of relevant circumstances." *Serzone Products Liability Litigation*, supra, 231 F.R.D. 221 at 241. *Accord Horton*, 855 F. Supp. At 828.

Because this Court has already certified this class action for litigation purposes pursuant to the requirements of Fed.R.Civ.P. 23(a) &(b)(3), (Doc 400), all of the Court's findings and rulings therein still apply for purposes of approving the proposed class settlement. Accordingly, the Court may focus its determination on whether the settlement is "fair, reasonable, and adequate" consistent with the principles and factors discussed herein. *See Henley v. FMC Corp.*, 207 F. Supp.2d 489 (S.D.W.Va. 2002) (approving class settlement in a case in which class action had already been certified for litigation purposes). Courts within the Fourth Circuit post-*Amchem*

which have certified classes for "settlement-purposes only" have acknowledged that such certifications do not present the same problems that certification of a litigation class proposing the same class definition presents because the issue of whether the case, if tried, would present trial management problems is excluded since the settlement precludes any trial. *See In re Serzone Products*, 231 F.R.D. at 239; *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 440 (4th Cir. 2003). In *Amchem v. Windsor*, 521 U.S. 591, 620 (1997) Indeed, as noted in the official comments to the 2018 amendment to Rule 23(e)(1): "**If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.**" Comments, Fed.R.Civ.P. 23(e)(1) (emphases added). In the present case, a suitable basis for class certification already exists in the record as found by the Court (Doc 400), and the proposed settlement does not call for any change in the class certified or the subleases as ordered by the Court since the settlement addresses each of the original subleases.

**B.    The Settlement**

The settlement addresses the claims which were certified by this Court as claims which were determined to be acceptable to be pursued in this class action. There were numerous motions and rulings by the Court throughout the litigation. Since this case was hotly litigated on each and every claim, including class certification, this Court already has intimate knowledge of the plaintiffs' claims, defendants' defenses, and the overall case. Also, since plaintiffs were prepared with witnesses and evidence to begin a three-week or longer trial, which was to begin only one business day after the preliminary "settlement term sheet" was agreed to, plaintiffs' and defendants' counsel were well aware of the legal and factual issues, the strengths and weakness of

10

the plaintiffs' claims, and the strengths and weaknesses of the defendants' defenses as well as possible appellate and collateral issues.

The damages claimed were for wrongful deductions from plaintiffs' royalty and the failure to pay plaintiffs the full amount of royalty due plaintiffs. The deductions are addressed in the settlement based upon the actual yearly monetary "cost of service rates" of the defendants applied to each category for a calculation of damages for each class member. The deductions included monetary deductions for gathering and transportation where in some cases the lease did not allow for deductions to be taken. These deductions in some cases included severance taxes. Where the deductions were allowed by the terms of the lease, plaintiffs' experts determined what were reasonable and actually incurred expenses and offered opinions as to what deductions were allowed and those that were not allowed. Plaintiffs' experts recalculated the amounts due each lessor and compared the reasonable and allowable amounts to the amounts actually paid and any shortfall was determined as damages.

As the Court can determine from the agreement, the defendants will be responsible to pay an amount which is fair, reasonable, and adequate as compensatory damages into a settlement fund from which class members will receive proportionate amounts of the fund given the amount of deductions which were taken and the failure to pay the royalty due, after (1) deducting class counsel attorney fees and the litigation costs, and (2) deductions for class representatives' incentive payments. Where deductions were not allowed by the lease language the damages were determined by calculations the total deductions throughout the class period. In addition, there is a net minimum settlement amount for each class member which is also paid from the settlement fund.

The Settlement Agreement provides remedies going forward for leases which were leasehold interests owned by EQT during the class period.  It will allow plaintiffs class members

11

to identify what may be deducted from plaintiffs' royalty, if anything, and what the basis for any deductions are. The Settlement Agreement provides for transparency which will allow plaintiffs to more easily determine the price lessors are due for their gas and the method for calculating the price upon which the royalty percentage is applied.

The Class Administrator will forward a notice of the class settlement to each class member based upon the defendants' data and information and from the administrator's investigation of current addresses as well as other forms of notice. See previously filed under seal Exhibit A Class Notice Plan by Class Notice Expert Shannon Wheatman and Kinsella Media, LLC (filed under seal pending preliminary approval of settlement). Once class notice is sent to the class members, the members will have a reasonable time within which to exclude themselves from the class settlement if they desire.

A. The Settlement is Fair and Reasonable

The Court should find that the settlement is fair and reasonable. The primary element of fairness is present in this settlement:

1. The status of the case at settlement was that the parties had completed discovery, prepared for trial and the Court had ruled on the pretrial motions.

2. Discovery in this case was enormous and thorough, examining defendants' monetary deductions, costs and expenses, and the defendants' background and history related to paying royalty.

3. Negotiations did not occur in this case until after the case was prepared and ready for trial. When negotiations did occur, they were formal through mediation and constant, day to day, over two months prior to final settlements. They were at arm's length and were not collusive.

    4.    The experience of counsel in the area of class litigation is significant, including experience with regard to class action litigation related to oil and gas lessors' various leases and the payment of royalty in the applicable jurisdiction, West Virginia. The Court previously found plaintiffs' class counsel to be approved to represent the class. Class Counsel and class representation were fully prepared to try the case when it settled. Therefore, the fairness element exists which argues for approval.

The same is true with regard to reasonableness and adequacy of the settlement. All elements are present:

    1.    The settlement takes into consideration the relative strength of the plaintiffs' case on the merits, as all of defendants' motions had been ruled upon prior to negotiation. Therefore, the strengths were well known.

    2.    The defendants' defenses which plaintiffs may encounter in trial and appeal of the case were taken into consideration. There have been numerous court rulings in similar litigation in West Virginia potentially related to issues in the case. There were factual differences with respect to the liability and damages in the case. While plaintiffs believe their position to be strong, they are experienced and know of the uncertainty in the ultimate outcome of litigation at both the trial level and the appellate level.

    3.    The costs expended in discovery and preparing for trial are extensive given the circumstances, as the record reflects. The potential going forward was a trial that would have lasted three weeks or more and subsequently there would be appeals from any verdict. From an appeal there exists potential for a retrial and/or changes

    to the amount or extent of compensation. Therefore, there exists a threat of a lesser outcome at trial or from an appeal or subsequent retrial. Additionally, any appeal would involve complex legal and factual issues and, therefore, likely would take months to a year to be concluded with the possibility of a retrial being ordered which would further delay the resolution of this litigation and the receipt of any compensation to which the class members might ultimately be entitled.

4. While there is no known threat of insolvency, the defendants have agreed to promptly fund the class settlement for substantial money which must be taken into consideration.

5. The parties submit that there are no conflicts of interest between the Class and any of its subclasses or between the Class or any of its subclasses or Class Counsel.

Therefore, all elements of reasonableness and adequacy are met and the Court should preliminarily approve the Settlement.

## II. The Court Should Appoint Class Notice Expert Shannon R. Wheatman and Class Administrators, Approve Notice and Notice Plan and Direct The Notice to Be Sent to The Class

The Court has previously approved Shannon R. Wheatman as Class Notice Expert (Doc 497) and directed notice be sent to the class after class certification (Doc 400). The Court also appointed the Class Administrator to send notice to the class as ordered pursuant to the approved notice plan (Doc 497).

Pursuant to FRCP 23(c) plaintiffs request that Court to (1) reappoint Shannon R. Wheatman and Kinsella Media, LLC ("KM"); and (2) reappoint Chuck Smith and John Jenkins, and the accounting firm, Smith Cochran Hicks, PLLC, as the Class Administrator for the purpose of providing notice and information to the class as set forth in the notice plan.

Further, Plaintiffs request the Court to approve the class settlement notice plan proposed by Shannon R. Wheatman, President of Kinsella Media, LLC("KM"), experienced experts in designing and implementing notices and programs for class actions pursuant to FRCP 23. See Declaration of Shannon Wheatman, Ex. B, describing and explaining that the form of notice, content and communication plan, both mail and publication, satisfies all requirements for notice and that the notice and plan represent the best notice practicable under the circumstances. The proposed notice, Ex. B-2; the envelope for mail, Ex. B-3; and the Publication Notice, Ex. B-4, are attached to Ms. Wheatman's declaration. Ms. Wheatman's CV is attached as Ex. B-1.

F.R.C.P. 23(c) requires that the notice for the subject class action provide the best notice practicable under the circumstances. *Amchem Products, Inc. v. Windsor*, 521 US 591, 593 (1997). Individual notices should be provided to all members who can be identified through reasonable effort. *Eisen v. Carlisle and Jacquelin*, 94 S. Ct. 2140 (1974). *Phillips Petroleum Co. v. Shutts,* 70 S. Ct. 876 (1985). The subject notice plan provides for notice by mail to all members of the class who are known. Since defendants have the names and addresses of the class members, notice will be sent by United States Mail to all known lessors who are Class members.

The defendants have previously provided the Class Administrator, subject to protective order, with the names, addresses, payment databases, and social security numbers of the lessors in order to provide for the previous Notice to the Class. Since there will be changes in ownership of lessors by various means, including descent and distributions, sale and assignment, defendants will provide an updated database, any new names, addresses or other data including social security numbers for the Class subject to a protective order. In addition, the notice will also be provided by publication in newspapers across West Virginia. In the event that the lessor class member lives out of state and their address is unknown, then notice will be made by Earned Media, wherein a

nationwide press release will be distributed on P.R. Newswire's US1 news circuit reaching approximately 15,000 print and online media outlets and more than 5,400 websites, databases and online services. A nationwide press release is also being utilized to reach out-of-state lessors.

Prior to mailing the notices, the addresses will be checked against the National Change of Address ("NCOA") database, which is maintained by the United States Postal Service ("USPS.") In order to ensure the most accurate mailings possible, the Claims Administrator will certify addresses via the Coding Accuracy Support System, and verify them through Delivery Point Validation. Additionally, if available, the social security numbers of former leaseholders will be checked against the Social Security Index which is maintained by the Social Security Administration. An heir search will be done for any former leaseholder who is deceased.[11] Notices which are returned will be re-mailed and if not delivered, will be further searched through a third-party vendor.

Further, a settlement website will be updated at the URL www.EQTRoyaltyWVClass.com to enable potential Class Members to get information about the settlement. A toll free number will be updated allowing Class Members to call and request that a Settlement Notice be mailed to them or listen to frequently asked questions. A post office box will also be established to receive Class Member requests for exclusion, as well as request for Long Form Notice or other information.

As set forth in Manual for Complex Litigation, 4th, David F. Herr, 2017, §21.311, p. 347-348, the notice pursuant to FRCP 23(c) should clearly and concisely state in plain and easily understood language:

    (i)    the nature of the action; Ex. B2, Class Notice, p. 1, §1-5.

    (ii)    the definition of the class certified; *Id.* §§6-13.

---

[11] The deceased's name and address will be used to search a third-party address locator service for other individuals that lived at the same address at any time with the deceased.

  (iii)  the class claims, issues, and defenses; *Id.* §2, 4, 5, 7, 8, 9, 10, 12.

  (iv)  that a class member may enter an appearance through an attorney if the member so desires; *Id.* §15.

  (v)  that the court will exclude from the class any member who requests exclusion; *Id.* §§15-16.

  (vi)  the time and manner for requesting exclusion; and *Id.* §§15-16.

  (vii)  the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* §16, 19, 20.

Further, the content of the notices should advise its members when and how a class member may opt out of the class. See Notice §15, which addresses the procedure for opting out of the class. The above Manual also states that supplement of information should be provided in the notice to enable the class member to make an informed decision about their participation including the following:

  (viii)  describe succinctly the positions of the parties; See Notice Ex. B2, Notice, §§1-13.

  (ix)  identify the opposing parties, class representatives, and counsel; *Id.*, §§ 1, 6-12, 7-18.

  (x)  describe the relief sought; and *Id.,* §§1-5, 13, 21.

  (xi)  explain any risks and benefits of retaining class membership and opting out, while emphasizing that the court has not ruled on the merits of any claims or defenses. *Id.*, §1, 4, 10, 12, 14, 15, 16, 20.

The Notices and Notice Plan, as set forth in Ex. B and attachments, fully satisfies the requirement of FRCP 23 and the due process requirements for the class. Therefore, Plaintiffs request and move that the previously filed Notice Plan, Ex. B2 through B4, and the Notices and Exhibits attached to same be approved by the Court.

Plaintiffs request and move the Court to direct Chuck Smith and the firm of Smith Cochran and Hicks, PLLC as the Settlement Class Action Notice Administrator, to mail the notices and assure publication is performed pursuant to the Court's order and the notice plan. Also, with

approval of the court, the administrator will install and manage a website for the Class Action and its members and will communicate when required, as permitted by the Court's orders and by the approved notice.

Additionally, the Plaintiffs move the Court to enter an order regarding the following deadlines:

(1) A deadline that that all notices be mailed, published and prepared by the Administrator in accordance with the notice plan;

(2) That a deadline within which the class members have to submit requests to be excluded from the class (opt-out) and the content and form of the notice of exclusion;

(3) A deadline within which a lass member has within which to file an objection to the settlement, attorney fees and costs and any other provision embodied in the settlement agreement and its content and form required for filing of any objection and for the right to present objections and arguments at the final hearing;

(4) The date, time and place of the final hearing before this Court where the Court will hear evidence and argument as to whether the settlement is fair, reasonable and in the best interest of the class and meets the requirements of FRCP 23.

(5) Such other further and general relief as the Court deems just and proper.

The Defendants, having reviewed the motion represent that they have no objection to the motion and relief requested.

                                                THE KAY COMPANY, LLC,
WILLIAM CATHER, Trustee
of Diana Goff Cather Trusts,
and JAMES E. HAMRIC III,
and all other persons and
entities similarly situated,

18

By Counsel

/s/ *Marvin W. Masters*
West Virginia State Bar No. 2359
Richard A. Monahan
West Virginia State Bar No. 6489
April D. Ferrebee
West Virginia State Bar No. 8034
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
F:\5\903\b082.docx

Michael W. Carey
West Virginia State Bar No. 635
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street, East, Suite 901
Charleston, West Virginia 25301
Counsel for Plaintiffs

# CERTIFICATE OF SERVICE

I, Marvin W. Masters, hereby certify that on February 7, 2019, I electronically filed "Plaintiffs' Memorandum in Support of Motion to Preliminarily Approve Settlement of This Class Action and Entry of Scheduling Order Including the Final Hearing to Approve Settlement" with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the following CM/ECF participants:

>David K. Hendrickson
>Carl L. Fletcher, Jr.
>Hendrickson & Long PLLC
>214 Capitol Street
>Post Office Box 11070
>Charleston, West Virginia 25339
>daveh@handl.com
>cfletcher@handl.com
>Counsel for Defendants

>/s/ *Marvin W. Masters*
>Marvin W. Masters (WV Bar No. 2359)
>Richard A. Monahan
>West Virginia State Bar No. 6489
>April D. Ferrebee
>West Virginia State Bar No. 8034
>The Masters Law Firm lc
>181 Summers Street
>Charleston, West Virginia 25301
>mwm@themasterslawfirm.com
>ram@themasterslawfirm.com
>adf@themasterslawfirm.com