### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF WEST VIRGINIA
### AT CLARKSBURG

**THE KAY COMPANY, LLC, et al.**

    **Plaintiffs,**

v.                            **CIVIL ACTION NO. 1:13-CV-151**
                                **(Honorable John Preston Bailey)**

**EQT PRODUCTION COMPANY,**
**et al.**

    **Defendants.**

### FINAL ORDER
### APPROVING CLASS ACTION SETTLEMENT

Pending before the Court is Plaintiffs' Motion to (1) enter an order granting final approval of the Settlement Agreement reached in the above-styled civil action ("the Settlement Agreement"); (2) find that the parties and the Class Administrator have completed all settlement notice obligations required by this Court's Order Preliminarily Approving Settlement (Doc. Id. 747) and that the notice and the notice plan meets all the requirements of due process and F.R.C.P. 23(c) and that the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 have been satisfied; (3) find that the Settlement is fair, adequate and reasonable based upon all factors which are pertinent and relevant to the required analysis by this Court; (4) find that the parties and class members who have not excluded themselves (the "Settlement Class")

are bound by the Settlement Agreement and this Final Order; (5) order that the Class Administrator be directed to distribute the Benefit notices and Claim Forms in accordance with the terms and conditions of the Settlement Agreement and to complete all aspects of the administration of the Settlement as provided for in the Order for Preliminary Approval until all notices and communications with class members and counsel for the parties is completed and to file a report to the Court and parties at the conclusion of the Administration; (6) find that there is no just reason for delay and that the Court enter an order dismissing the case with prejudice upon approving of the Settlement and upon the full funding of the Settlement Fund; (7) reserve and retain jurisdiction over this action, including the Settlement Agreement and the administration and completion of the terms and conditions of the Final Settlement and retain the exclusive jurisdiction over any suit, action, proceeding or dispute relating to an arising out of this Court's orders herein or the Settlement Agreement; and (8) for such other, further and general relief as the Court deems just and proper.

Upon consideration of the motions described in the foregoing paragraph, the respective attachments to the motions, the declarations filed in support of the motions, the memoranda filed in support of the motions, all other matters of record in this action, and the representations made by counsel in open court on June 24, 2019, and having previously ruled that the Settlement Class fulfills all requirements for the certification of a settlement class pursuant to F.R.Civ.P.23, conditioned on the terms of the Settlement Agreement entered into by the Plaintiffs and the EQT Defendants, and that the Settlement

Agreement itself meets the applicable criteria for final approval, the Court hereby FINDS and ORDERS as follows:

## The Litigation

On January 16, 2013, Plaintiff Class Representatives, by counsel filed their Complaint in Civil Action No. 13-C-2 in the Circuit Court of Doddridge County, West Virginia, against the EQT Defendants seeking, among other things, damages for alleged improper deductions of post-production expenses from their royalty payments and damages for breach of lease agreements, alleged breach of fiduciary duty, alleged fraud, alleged violations of the flat rate royalty statute (W. Va. Code § 22-6-8) and the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, *et seq.*), and for punitive damages, all related to the alleged improper payment of royalties.

EQT removed this case to the United States District Court for the Northern District of West Virginia on May 31, 2013, as Civil Action No. 1:13-CV-151, and filed its answer and asserted affirmative defenses denying liability.

Plaintiff Class Representatives filed their Amended Complaint on May 9, 2014, adding various allegations, to which EQT filed another answered and asserted affirmative defenses denying liability.

After class discovery, the plaintiffs filed their motion for class certification on September 30, 2016, which the defendants opposed. After briefing by all Parties, the Court found a class action appropriate under F.R.C.P. 23(b)(3) and ordered that the

following class be conditionally certified as a F.R.C.P. Rule 23(b)(3) class action on

September 6, 2017.[1]

WHEREAS, the Court therefore certified the following class and subclasses:

All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their natural gas or mineral estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period.) (See exception below.)

> Subclass A - All EQT natural gas lessors with flat rate leases converted by operation of W. Va. Code, § 22-6-8 and that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period.).

> Subclass B - All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8,

---

[1] There was excepted from this class those lessors whose lease interests were acquired by EQT in purchases of stock, mergers or asset purchases of Stone Energy, Republic Energy, Trans Energy, and Statoil as set forth more specifically in the transactions set forth below:

    a.    Purchase and Sale Agreement by and between Statoil USA Onshore Properties, Inc., as seller, and EQT Production Company, as buyer, dated April 20,2016.

    b.    Purchase and Sale Agreement by and among Republic Energy Ventures, LLC, Republic Partners VI, LP, Republic Partners VII, LLC, Republic Partners VIII, LLC, and Republic Energy Operating, LLC, collectively as sellers, and EQT Production Company, as buyer, dated October 24,2016.

    c.    Agreement and Plan of Merger by and among Trans Energy, Inc., EQT Corporation, and WV Merger Sub, Inc., dated October 24, 2016.

    d.    Purchase and Sale Agreement by and between Stone Energy Corporation, as seller, EQT Production Company, as buyer, and EQT Corporation, as buyer parent, dated February 9, 2017.

Therefore, the notice will not be sent to those lessors and the published notice and the website will clearly state that the lessors of the above acquired leases are not members of this class.

4

2008, and extending to the present (during any time within their leasehold period,) and whose leases do not permit the deduction of post- production expenses under *Tawney*, except for those lessors holding flat rate leases converted according to W. Va. Code, §22-6-8.

Subclass C - All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period,) and whose leases do permit the deduction of postproduction expenses under *Tawney*, except for those lessors holding flat rate leases converted according to W. Va. Code, §22-6-8.

There would be excepted from the class the officers and agents of any defendant or subsidiary of any defendant named in this lawsuit or any lawsuit involving the same or similar claims as those alleged in this lawsuit; any attorney for any such defendant; any attorney for any plaintiff in this lawsuit or in any lawsuit involving the same or similar claims as those alleged in this lawsuit against any such defendant; and any judicial officer who presides over this lawsuit or over any other lawsuit involving the same or similar claims as those alleged in this lawsuit against any such defendant.

The Court certified the class and appointed Marvin W. Masters and the Masters Law Firm LC and Michael W. Carey and the law firm of Carey, Scott, Douglas & Kessler, PLLC as Class Counsel and appointed the individual plaintiffs, The Kay Company, LLC, William Cather, Trustee of Diana Goff Cather Trusts and James E. Hamric, III, as class representatives for and on behalf of the Class.

The Parties engaged in exhaustive discovery over the five (5) years of litigation up to and including the conclusion of expert depositions on November 20, 2018.

The trial of this case was scheduled to begin on November 27, 2018. All pretrial motions were filed, briefed and ruled upon by the date of the Pretrial Conference and Hearing on November 15, 2018, including Defendants' Motions for Summary Judgement filed in August 2018.

The parties began preliminary discussions with respect to settlement after the Court ruled on pretrial motions at the pretrial in Wheeling, West Virginia on November 15, 2018. Thereafter the parties scheduled a formal mediation in Pittsburgh, Pennsylvania to occur on November 19, 2018, before Joseph Selep, an experienced trial counsel and mediator of civil actions. That mediation failed to resolve the case. However, the parties continued to mediate through the mediator from day to day with the trial to begin on Tuesday, November 27, 2018. The parties reached a tentative settlement on some of the important terms on November 23, 2018 and informed the Court through the mediator. The Court then continued the trial to December 17, 2018. The Parties continued to mediate with the mediator until Monday, December 10, 2018, when they confirmed additional terms and agreement as to the "Settlement Terms" signed by counsel of all Parties. The parties then undertook negotiations with respect to a final settlement agreement. Mediation, therefore, continued from day to day, including mediation at offices in Wheeling, West Virginia and at the United States District Court in Wheeling in December with the Final Settlement Agreement terms being agreed to and signed by counsel for all parties on January 30, 2019. The Court previously preliminarily approved

this settlement and appointed the Class Administrator and Notice Expert for this class action and charged them with the responsibility to provide notice in accordance with F.R.C.P. 23(c) and 23(e) and the Court's Order. The Court also found that the notice program met the requirements of F.R.C.P. 23 (Doc. Id. 747.)

### The Settlement:

After six years of intense litigation and one business day from beginning jury selection, the parties advised the Court that they believed they had reached a point in negotiations that it would be worthwhile to continue negotiations and attempt to reach a class wide settlement. The Court then continued the trial for a short period in order to afford the parties time to further negotiate. The final settlement agreement, however, was not completed until January 30, 2019, and not signed by defendants until February 7, 2019. The litigation and the settlement negotiations were intense and adversarial. There was no collusion. Settlement was not even mentioned until after the Court ruled on essentially all pretrial motions.

The Settlement Agreement is a fifty-page document detailing the terms of the settlement and does not lend itself to a summary of each term of the agreement. Relevant terms were previously set out in plaintiffs' memorandum in support of preliminary approval of the settlement. (Doc. Id. 743, pp. 10-12.) In summary, the Settlement Agreement provides for each member of the class to recover the deductions improperly taken from their royalty based upon this Court's Orders, less attorney fees and costs and

less compensation for the class representatives who brought and prosecuted the case with a minimum payment of $200.00. If a class member's proportionate share was calculated based upon the proportionate distribution of the Settlement Fund if it totals less than $200.00, they will receive at least $200.00 net to them. All other members will receive a proportionate share of the Fund based upon the amount of deductions taken from their leases/wells as compared to the total remaining amount in the Fund after deducting the attorney fees and costs and incentive compensation. The $200.00 payment is also deducted before calculation, since that calculation is not based upon a proportionate percentage. There are other future benefits from the settlement as set out below.

Going forward, EQT has agreed to comply with the Court's orders with respect to whether the defendants can take deductions from each category of lease subject to the settlement. This means that all non "Tawney-compliant" leases and flat rate leases will have zero deductions and the leases which are "Tawney-complaint" will have deductions taken but the amount of the deductions will be reduced to 12 cents per dth subject to modification as set forth in the Settlement Agreement. There is also an option for some lessors of modifying their lease to add a pooling amendment in exchange for an additional 2% royalty increase up to an 18% maximum royalty percentage.

The Settlement Agreement provides for a Calculation Methodology for each type of lease and identifies the lease and wells which will be subject to specific index prices based upon the location of the wells and geologic formations the well is drilled into.

Also, it provides for a recognition of EQT's alleged legal duty with respect to situations where the index price may change in a significant way. In that circumstance, EQT retains the duty to determine "price" by using the average of the highest two indexes based upon sales volume. *See, e.g.,* Doc. Id. 745, pp. 21-22, § II.C.4(a) and (b). It also provides that if there is a "significant" change in circumstances which makes the methodology unreasonable in the future, then EQT agrees that it will continue to adopt a method which satisfies its obligations as the lessee to market and sell the gas under the leases. *Id.* p. 27, II. C. 9. Further, there is an agreement that EQT may be required to add extra money to the Fund if the data was inaccurate or incomplete upon which the amount of deductions were calculated. *Id.* VI. F.

### Notice

The Court previously preliminarily approved this settlement and appointed the Class Administrator and Notice Expert for this class action and charged them with the responsibility to provide notice in accordance with F.R.C.P. 23(c) and 23(e) and the Court's Order. The Court also found that the notice program met the requirements of F.R.C.P. 23 (Doc. Id. 747.) Based upon the Declarations of The Notice Expert and the Class Administrator, the Court finds that the Notice Plan, as approved by this Court for purposes of providing the reasonably best notice practicable, has been completed and meets all requirements of F.R.C.P. 23(c)(2)(B) and 23(e)(1). With respect to any changes which required a different or amended class certification, this Court has

previously preliminarily found that the Settlement Agreement in this case was "fair, reasonable and adequate." (Order dated December 31, 2019, Doc. Id. 747, pp. 5-11.) The Court further finds based upon the Declaration of Defendants' counsel and the exhibits attached to the Declaration (Doc. Id. 761) that the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 have been fully and completely satisfied.

Personal Jurisdiction

This Court finds that it has personal jurisdiction over the Settlement Class Members since notice provided to such Class Members was reasonable and afforded a reasonable opportunity to be heard. *See In re Serzone Products Liability Litigation,* 21 F.R.D. 221, 231 (S.D. W. Va. 2005). The Court further finds that based upon the notice provided to the Class Members subsequent to this Court's grant of preliminary approval of the settlement, the due process requirements provided for under Rule 23 and the Fifth Amendment to the U.S. Constitution have been met in this case.

The Settlements Are Fair, Reasonable, Adequate, in the Best Interest of the Class, and Not the Product of Collusion

Rule 23(e) of the Federal Rules of Civil Procedure, as amended effective

December 1, 2018, provides, in pertinent part:

**(e)** **Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class**—or a class proposed to be certified for purposes of settlement—**may be settled, voluntarily dismissed, or compromised only with the court's approval.** The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

**(2)** *Approval of the Proposal.* If the proposal would bind class members, **the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:**

10

1. **the class representatives and class counsel have adequately represented the class;**

2. **the proposal was negotiated at arm's length;**

3. **the relief provided for the class is adequate, taking into account:**

    (i) **the costs, risks, and delay of trial and appeal;**

    (ii) **the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;**

    (iii) **the terms of any proposed award of attorney's fees, including timing of payment; and**

    (iv) **any agreement required to be identified under Rule 23(e)(3); and**

4. **the proposal treats class members equitably relative to each other.**

\* \* \*

Fed.R.Civ.P. 23(e) (2018) (bolded-only emphases added).

### Rule 23(e)2 – The Settlement is Fair, Reasonable and Adequate.

First, in addressing whether the class representatives and class counsel have adequately represented the class. F.R.C.P. 23(e)(2)(A). This case was litigated for six years. Class counsel spent thousands of hours and over one-million dollars in funds to employee numerous experts and reviewed and analyzed data and documents, take depositions of defendants' corporate officers and employees and defendants' experts, reviewed personally or electronically over six million pages of documents and was prepared to begin trial in one business day from settlement and spent over two months negotiating the terms of the fifty page Settlement Agreement. Therefore, the Court finds that class representatives and class counsel fairly and adequately represented the class.

11

### Rule 23(e)(2)(B) - Approval of the Proposal.

The proposal was negotiated at arms-length. The rigorous negotiations for settlement were no different from the litigation. The negotiation was extraordinarily adversarial with a mediator involved at different times and others where the parties communicated directly for over two months in numerous meetings and phone calls and through correspondence. The case was settled only after both sides were fully prepared to start trial. It was clearly arms-length and not collusive. F.R.C.P. 23(e)(2)(B).

### Rule 23(e)(2)(C)(i) - Costs, risks and delay of trial and appeal.

Delay on appeal would have been a factor since defendants attempted to pursue appeals in the Fourth Circuit and by certified questions to the West Virginia Supreme Court. A verdict for Plaintiffs would have likely resulted in an appeal by the Defendants. There is always a risk of a trial to jury and here, in addition, there were aggressive pursuits of changes to legal rights of lessors on several fronts, both in the West Virginia Legislature and the West Virginia Supreme Court of Appeals. Of course, appeals of this litigation would have been costly and would have delayed resolution.

### Rule 23(e)(2)(C)(ii) - Method of Distributing Relief.

The identity and addresses of most class members are known, although due to expected heirship issues, some are not known, or their addresses cannot be found. However, the distribution in this case is mathematically determinable by means of a fair method by determining each lessor's amount deducted by EQT which the Court

determined were not permitted and then by determining each lessor's proportionate amount due in the Settlement from the net total funds. There is a $200.00 minimum payment. Therefore, first the fees (attorney and class representatives) and costs are subtracted from the total, then the remaining is left to distribute to class members. If any member's proportionate part is less than $200.00, then the Class Administrator, nevertheless, pays those lessors $200.00 as a minimum payment. The remaining funds then are proportionally determined and paid to each lessor based upon its deductions taken from them. The Court finds that it is fair, adequate and reasonable, both in amounts of recovery after fees and costs, and it is an effective way of equitably distributing the Fund similarly to recovery if the case was an individual lawsuit.

### Rule 23(e)(2)(C)(iii) - The terms of any proposed award of attorney fees including timing of payment.

Class counsel has requested a one-third contingent fee and costs as compensation for their representation and a $50,000 payment to each of the Class Representatives. The Settlement Agreement provides for EQT to pay the $53.5 million into the Settlement Fund after it was confirmed that the "Minimum Required Approval Percentage" was met. The Class Administrator's report was filed with the Court on June 6, 2019 and the settlement was funded on July 9, 2019. Therefore, the distribution to Class Counsel and Class Representatives should be made after entry of this Order and execution of Claims Benefit Notices by Class Members. The amount to be paid to Class Members will remain in the Fund until the distribution is complete.

**Rule 23(e)(2)(C)(iv) - Any agreement required to be identified under Rule 23(e)(3).**

Plaintiffs' counsel has verified and the Court finds that there are no other agreements made in connection with this settlement and there are none.

**Rule 23(e)(2)(D) - The proposal treats class members equitably relative to each other.**

Each class member will receive a recovery which is based upon the amount of money (deductions) taken from their royalty income less fees and costs, as set forth above, except that there will be some class members who would have received less than $200.00 and it was in the best interest of the class to assure each class member would receive at least that amount and it will not significantly affect the remaining class members' recovery. In addition, all class members whose lease was sold prior to December 31, 2017, will not get the benefit of EQT's agreement to not take deductions, etc. going forward because EQT has no means to enforce or guarantee that. That only applied, however, to the leases where the lease, including all geologic formations, is sold in its entirety. If EQT retained rights to some formations, then the agreement is still in effect in those formations still owned by EQT for those class members. Therefore, the Court finds that all class members were treated equitably in accordance with their relation with other class members.

14

**Rule 23(e)(5) - Class Member Objections.**

There were no objections filed to any part of the Settlement Agreement, including amounts, future benefits and any other terms, the attorney fee of one third and costs, or to the class representatives' recovery of $50,000.00 each, for their services.

Accordingly, the Court hereby finds, based on all of the above, that the Settlement is fair, reasonable, adequate, in the best interest of the class, and not the product of collusion.

**WHEREFORE,** based upon a review of the Settlement and the core issues as set out in F.R.C.P. the Settlement Agreement is fair, reasonable and adequate.

**WHEREFORE,** based on all evidence made of record in this matter and the findings set forth above, it is hereby Ordered that the Settlement Agreement in this class action proceeding shall be and is hereby **GRANTED FINAL APPROVAL** pursuant to Rule 23(e).

It is further **ORDERED** that this action be and is hereby **DISMISSED WITH PREJUDICE** and with costs to be awarded solely as provided for under the Settlement Agreement, except that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that all participating Class Members shall be and are hereby **BARRED AND ENJOINED** from asserting royalty claims against any party

15

released under the subject Settlement Agreement, except that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) shall not be **BARRED AND ENJOINED**.

It is further **ORDERED** that the participating class members' claims are **RELEASED** through the dates provided for under the terms of the Settlement Agreement, and that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) the opt-out Class Members' claims shall not be released.

It is further **ORDERED** that the subject Settlement Agreement provided the exclusive remedy for participating Class Members (and any successors-in-interest) with respect to any and all royalty claims against the Parties released under the Settlement Agreement that were or could have been brought in this action.

It is further **ORDERED** that there is no just reason for delay, and the Court hereby expressly **DIRECTS** the entry of a **FINAL JUDGMENT** as to the claims of participating Class Members under F.R.Civ.P.54(b).

The Court further **ORDERS** that the Court shall reserve continuing and exclusive jurisdiction over the parties and the participating Class Members to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties and the Class Members.

THE BAR DATE

It is further **ORDERED** that a **BAR DATE** of sixty days following the mailing of the Benefit Notices and Claims Forms to the last known address of the class member shall be and is hereby established such that any such Class Member who fails to return a completed claims form within sixty days after the mailing date of the Benefit Notice and Claim Form shall be deemed to have elected to participate in the Settlement Class but shall not receive a settlement payment unless and until the Release provided for under the Settlement Agreement is executed. The Class Administrator is to identify on the form that the claim form must be returned and received by the Claim Administrator within the sixty (60) days which begins to run on the day the claim form is placed in the mail by the Administrator and should correspond to the post mark date on the envelope. The Administrator is to hold the money allocated for payment to any person who does not comply with the sixty (60) day Bar Date in a separate account until the further Order of the Court.

**ENTERED** this __22nd__ day of July, 2019.

**HONORABLE JOHN PRESTON BAILEY, JUDGE**
**UNITED STATES DISTRICT COURT**