IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

THE KAY COMPANY, LLC
et al.,

        Plaintiffs,

v.                                                  CIVIL ACTION NO. 1:13-CV-151
                                                    (Honorable John Preston Bailey)

EQT PRODUCTION COMPANY, et al.,

        Defendants.

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO ENFORCE THE FINAL JUDGMENT ORDER AND FINAL ORDER**

Defendants EQT Production Company ("EQT Production"); EQT Corporation; EQT Energy, LLC; EQT Investments Holdings, LLC; EQT Gathering, LLC; and EQM Midstream Partners, LP f/k/a EQT Midstream Partners, LP (collectively, "EQT" or "Defendants"), pursuant to the July 22, 2019 Final Order Approving Class Action Settlement entered in this action (ECF No. 767) (the "Final Order"), move this Court to enter an order enjoining the plaintiffs[1] in a state court action captioned *Philip K. Williams, v. EQT Corporation, et al.*, Nos. 20-C-23, 24, 25, and 26 (W. Va. Cir. Ct., Ritchie Cty.) (the "Ritchie County Litigation"),[2] from proceeding with claims that were released in the class action Settlement Agreement (ECF. No. 745) approved by this Court.

**INTRODUCTION**

On July 22, 2019, after several years of litigation, this Court approved a $53.5 million statewide class action settlement that included ongoing payment obligations to resolve past and

---

[1]    The plaintiffs in the Ritchie County Litigation are Philip K. Williams, Timothy A. Williams, Diana L. Weiss, and Mahlon F. Harris (collectively, the "*Williams* Plaintiffs").

[2]    Defendants have concurrently filed a notice of this Motion in the Ritchie County Litigation.

future claims alleging that Defendants improperly paid royalties under oil and gas lease agreements in West Virginia.   This Court also entered a permanent injunction barring any settlement class member ("Settlement Participants")[3] from asserting royalty claims against any party released under the Settlement Agreement.

The *Williams* Plaintiffs are violating the Final Order.   While continuing to benefit from the settlement as Settlement Participants, they filed suit against several of the Defendants in West Virginia state court asserting claims for damages for alleged underpayment of gas royalties—the exact claims that were released by the Settlement Agreement and barred by this Court's Final Order.[4]   This Court retained exclusive jurisdiction over all Settlement Participants to enjoin competing actions, like the one filed by the *Williams* Plaintiffs.   EQT, therefore, respectfully moves this Court to enforce its Final Order and issue an order prohibiting the *Williams* Plaintiffs from proceeding with their released royalty claims.

## FACTUAL BACKGROUND

I.   **This Litigation Settled and Released Settlement Participants' Claims Against EQT Based Upon Alleged Improper Residue Gas Royalty Payments.**

A.   *Hamric* Claims and Class Certification.

On January 16, 2013, The Kay Company, LLC; H. Dotson Cather, Trustee of Diana Goff Cather Trusts; and James E. Hamric III (the "*Hamric* Plaintiffs") filed a class action lawsuit

---

[3]   For clarity, the Settlement Agreement defines "Class Members" as "all Persons in the combined Subclasses as certified by the Court on September 6, 2017 who have not opted out as of the Date of Settlement." (ECF No. 745, at 10).   Likewise, the Settlement Agreement defines "Class Participants" as "all Class Members who do not Opt-Out of this Settlement Agreement." (*Id*.).   "Opt-Out" means the right of Class Members to exclude themselves from the settlement by submitting an Exclusion Request[,]" and "Opt-Out Class Members" means "all Class Members who mail an Exclusion Request by the Opt-Out Deadline which is received by the Claims Administrator." (*Id*. at 15).   This Court's Final Order defines the "Settlement Class" as the parties and class members who have not excluded themselves. (ECF No. 767 at 1).   Notably, the *Williams* Plaintiffs concede that they are members of the class and that they did not opt-out of the *Hamric* Settlement.   (*Williams* Complaint, attached as **Exhibit 1**).

[4]   As explained below, the Settlement Agreement excluded certain claims related to royalties on natural gas liquids and, accordingly, this motion does ***not*** apply to those claims.

against EQT Production and EQT Corporation, on behalf of themselves and all other persons and entities similarly situated, seeking damages for alleged breach of lease agreements, breach of fiduciary duty, fraud, violations of the flat rate royalty statute (W. Va. Code § 22-6-8) and violations of the West Virginia Consumer Credit and protection Act (W. Va. Code § 46A-6-101, *et seq*.), and for punitive damages, all related to the alleged improper payment of royalties.  (ECF No. 767; ECF No. 1-1).[5]

After class discovery, the *Hamric* Plaintiffs filed their motion for class certification, which the defendants opposed.  On September 6, 2017, this Court entered an Order in which it certified the class, defined as follows:

> All EQT natural gas lessors that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their natural gas or mineral estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period.).

(ECF No. 400 at 37).

The Court certified certain subclasses within the larger class, including "Subclass A," of which the *Williams* Plaintiffs are members,[6] defined as follows:

> **Subclass A**:  All EQT natural gas lessors with flat rate leases converted by operation of W. Va. Code § 22-6-8 and that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas which was produced within the boundaries of the State of West Virginia from their estates during the period beginning after December 8, 2008, and extending to the present (during any time within their leasehold period).

---

[5]    The *Hamric* Plaintiffs later amended their Complaint, and added EQT Energy, LLC; EQT Investments Holdings, LLC; EQT Gathering, LLC; and EQT Midstream Partners, LP as defendants in this case.  (ECF No. 29).

[6]    The *Williams* Plaintiffs are members of Subclass A because they are persons having a fractional interest in a single lease subject to the West Virginia flat-rate statute (W. Va. Code § 22-6-8), for which EQT had royalty obligations after December 2008.  (*See* Ex. 1).

(*Id.*).

        B.      <u>The Settlement Agreement.</u>

        1.      Settlement of Claims for Alleged Underpayment/ Nonpayment of Residue Gas Royalties

On February 13, 2019, this Court granted preliminary approval of a class settlement. (ECF No. 747). The Settlement Agreement is the "exclusive remedy for all claims resolved in this litigation for Class Members who are Class Participants for claims for compensatory damages, declaratory and injunctive relief, punitive damages, and any other damages arising out of the Royalty Claims[,]" and is the "exclusive remedy for any and all Royalty Claims, resolved in this litigation, of Class Members who are not Opt-Out Class Members as set forth herein against EQT and any and all other Released Parties."[7] (ECF No. 745 at 44-45).

In exchange for Defendants' agreement to pay more than $50 million dollars to the class and make future royalty payments based on an agreed-to methodology, Settlement Participants released all claims asserted by the *Hamric* Plaintiffs based upon Defendants' alleged failure to pay proper gas royalties, *i.e.*, the "Royalty Claims," including claims for: (a) improper royalty payments and/or improper deductions; (b) improper volume; (c) improper measurement, improper sales prices, and (d) breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, *et seq.*), violation of the flat

---

[7]      The Settlement Agreement defines "Released Parties" as EQT Production Company; EQT Corporation; EQT Energy, LLC; EQT Investments Holdings, LLC; EQT Gathering, LLC; and EQT Midstream Partners, LP, "and their predecessors, successors, and past and present parents, subsidiaries, assigns, affiliates, general and limited partners, co-working interests in the Wells, officers, directors, agents, attorneys, insurers, and employees." (ECF No. 745, at 16). The *Williams* Plaintiffs filed their lawsuit against EQT Production Company; EQT Corporation; EQT Energy, LLC; EQT Midstream; EQT Gathering, LLC; and EQT Midstream Partners, L.P. The Settlement Agreement expressly identifies EQT Production Company; EQT Corporation; EQT Energy, LLC; EQT Gathering, LLC; and EQT Midstream Partners, LP (now EQM Midstream Partners, L.P.) as "Released Parties." "EQT Midstream" is a fictitious d/b/a or trade name used by various entities, including one or more of the Defendants and Defendants maintain that EQT Midstream is generally an improper party; however, the trade name would still be included in the broad definition of "Released Parties."

rate royalty statute (W. Va. Code § 22-6-8) and punitive damages related to the above claims or set forth in the record of this case, all based upon the alleged failure to pay proper royalty.  (ECF No. 745 at 16).

2.     Agreement on Going-Forward Calculation Methodology for Gas Royalty Payments

In the Settlement Agreement, EQT Production agreed to pay gas royalties without any deductions, including any deductions for gathering or severance taxes, for Marcellus wells drilled pursuant to flat rate converted leases, including wells drilled pursuant to the *Williams* Plaintiffs' flat rate converted lease.  (ECF No. 745 at 19).  EQT Production has paid the *Williams* Plaintiffs as promised, without any deductions in calculating gas royalty payments.

EQT and *Hamric* Settlement Participants also agreed upon the price for gas royalty calculations—the first of the month Texas Eastern (TETCO) M2 published IFERC Index Price per MMBTU.  EQT Production has paid the *Williams* Plaintiffs as promised, paying gas royalties based on the first of the month Texas Eastern (TETCO) M2 published IFERC Index Price per MMBTU.

In addition, the parties agreed that EQT Production would pay gas royalties based on the volume of gas sold at the first liquid trading point. (*Id.* at 26).  EQT Production has paid the *Williams* Plaintiffs as promised, calculating gas royalties based on the volume of gas sold at the first liquid trading point.

So long as the *Hamric* Settlement Participants' gas royalties are calculated and paid pursuant to the agreed methodology in the Settlement Agreement, they (including the *Williams* Plaintiffs) must "forbear from asserting any new claims for issues litigated and settled in this case, including but not limited to, claims related to deductions, pricing, volumes, severance tax

5

deductions, breach of fiduciary duty, fraud, W. Va. Code Ann. § 46A-6-101, *et seq*., punitive damages, attorneys' fees […] and prejudgment interest." (*Id*. at 19-20).[8]

      C.   <u>The Final Order and Injunction.</u>

On July 22, 2019, this Court entered the Final Order, dismissing with prejudice the claims of all Settlement Participants.  (ECF No. 767).  The Final Order provides that entry of a permanent injunction is the exclusive remedy in the event a Settlement Participant asserts royalty claims released by the Settlement Agreement:

> It is further **ORDERED** that all participating Class Members shall be and are hereby **BARRED AND ENJOINED** from asserting royalty claims against any party released under the subject Settlement Agreement, except that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) shall not be **BARRED AND ENJOINED**.

> It is further **ORDERED** that the participating class members' claims are **RELEASED** through the dates provided for under the terms of the Settlement Agreement, and that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) the opt-out Class Members' claims shall not be released.

> It is further **ORDERED** that the subject Settlement Agreement provided the exclusive remedy for participating Class Members (and any successors-in-interest) with respect to any and all royalty claims against the Parties released under the Settlement Agreement that were or could have been brought in this action.

---

[8]    Through the Settlement Agreement, Defendants obtained a full and complete release of liabilities, except that natural gas liquid ("NGL") claims that were not resolved fully in this litigation were not included in the Settlement Agreement.  The parties agreed that "the right to pursue any claim for NGLs or liquid hydrocarbons by any and all Class Members is not released by this settlement except as set forth in II.C (7)." (*Id*. at 45).  In light of the parties' agreement, Defendants are not moving to enforce the Settlement Agreement to enjoin the *Williams* Plaintiffs' NGL claims, except to the extent that Plaintiffs may allege damages for the deduction of processing costs prior to December 31, 2017.

(*Id.* at 15-16).   The Final Order also included a reservation of jurisdiction to enforce and administer the Settlement and the permanent injunction:

> The Court further **ORDERS** that the Court shall reserve continuing and exclusive jurisdiction over the parties and the participating Class Members to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties and the Class Members.

(*Id.* at 16).

## II.   The Court-Approved Notice Plan Provided Notice to *Hamric* Settlement Participants of the Settlement Agreement.

On January 25, 2018, after receiving argument and expert testimony on the proposed class-wide notice, this Court approved a comprehensive notice plan to provide class members with notice of the pending class action litigation, by mail and publication (the "Notice Plan"). (ECF Nos. 460, 475).   Likewise, on February 13, 2019, this Court approved that same comprehensive notice plan to once again provide class members with notice, this time of the Settlement Agreement.  (ECF No. 747).

Notably, when the *Hamric* Plaintiffs initially moved this Court for approval of the Notice Plan, they expressly contemplated that the contact information for some class members may be unknown:

> In the event that there may be a class member whose address is unknown, then notice will be by publication in newspapers all across West Virginia.  In the event that the lessor class member lives out of state and their address is unknown, then notice will be made by Earned Media, wherein a nationwide press release will be distributed on P.R. Newswire's US1 news circuit reaching approximately 15,000 print and online media outlets and more than 5,400 websites, databases and online services.  A nationwide press release is also being utilized to reach out-of-state lessors.

(ECF No. 460 at 2).  The *Hamric* Plaintiffs argued to this Court that the Notice Plan "satisfies all requirements for notices and that the notice and plan represent the best notice practicable under

the circumstances." (*Id.*). The *Hamric* Plaintiffs presented a Declaration from their proposed notice expert, Shannon R. Wheatman, Ph.D., in which she explained that the Notice Plan would "be effective and satisfy the requirements of Federal Rule of Civil Procedure 23(c) and due process." (ECF No. 460-1 at 2).

This Court agreed with the *Hamric* Plaintiffs and approved their proposed Notice Plan, as well as their proposed notice expert, Shannon R. Wheatman, and proposed class action notice administrator, Smith Cochran and Hicks, PLLC. (ECF No. 497). The deadline for class members to opt out of the class was June 11, 2018, and the deadline for class members to opt out of the Settlement Agreement was May 17, 2019. (ECF Nos. 521, 747). The *Williams* Plaintiffs did not opt out of the class or the Settlement Agreement by those deadlines. (Ex. 1 at 12 n.1; *Williams* Plaintiffs' Individual *Responses to Defendants' First Set of Interrogatories*, Interrogatory No. 10 (excerpts attached as **Exhibit 2**).

After finding that the Notice Plan was proper, this Court found that the Class Administrator properly implemented the Notice Plan. (ECF No. 767). When the *Hamric* Plaintiffs moved this Court to grant final approval of the settlement of this class action, they presented evidence to this Court that the Class Administrator had complied with its duty in completing the Notice Plan. (ECF No. 757). The *Hamric* Plaintiffs stated, "the Notice Plan, as approved by this Court for purposes of providing the reasonably best notice practicable, has been completed and meets all requirements of F.R.C.P. 23(c)(2)(B) and 23(e)(1)." (*Id.* at 2). The *Hamric* Plaintiffs further noted that: "For the most part, the class members and their addresses are known, although due to heirship issues with lessors who have died and left heirs over the years, some are not known or their addresses cannot be found." (*Id.* at 5).

The *Hamric* Plaintiffs presented this Court with evidence that 1,141 Class Members were not mailed notices, which consisted of 346 deceased Class Members with no identified living relatives and 795 Class Members for which EQT could not provide complete address data or sufficient research data to obtain mailing addresses.  (ECF No. 752-2 at 8).  This Court approved notice by publication for these 1,141 Class Members and, on July 22, 2019, found that "the Notice Plan, as approved by this Court for purposes of providing the reasonably best notice practicable, has been completed and meets all requirements of F.R.C.P. 23(c)(2)(B) and 23(e)(1)."  (ECF No. 767 at 9).

III.   **The *Williams* Plaintiffs, *Hamric* Settlement Participants, Assert Released Royalty Claims in the Ritchie County Litigation.**

The *Williams* Plaintiffs are owners of royalty interests under a flat-rate oil and gas lease covering a parcel of land in Ritchie County, West Virginia (the "Broadwater Lease"), which is operated by EQT Production.  (Ex. 1).  They were included in Subclass A of the *Hamric* Class and did not opt out of the *Hamric* Settlement Agreement.  (Exs. 1, 2).

Nonetheless, on July 16, 2020, the *Williams* Plaintiffs filed suit against Defendants, asserting the exact claims this Court "**BARRED AND ENJOINED**" in its Final Judgment. Specifically, the *Williams* Plaintiffs assert claims for:  (1) failure to properly account for royalties; (2) breach of contract; (3) violation of W. Va. Code § 22-6-8; (4) conversion; (5) unconscionability and breach of duty of fair dealing; (6) violation of West Virginia Consumer Credit and Protection Act; and (7) punitive damages.  (Ex. 1).  All of the *Williams* Plaintiffs' claims arise from alleged deduction of post-production costs and severance taxes, volumetric deductions, improper pricing, affiliate sales, and improper reporting on royalty remittance statements.  (*Id*.).  The *Williams* Plaintiffs recognize that they are Settlement Participants, though

they argue they should be excluded from the Final Order because they claim they did not receive actual notice of the settlement.  (Ex. 1 at 12 n.1; Ex. 2, Interrogatory No. 10).

**ARGUMENT**

**I.      This Court Has Jurisdiction to Enforce the Final Order.**

A district court may retain jurisdiction to enforce a settlement agreement by: (1) expressly so providing in the order; or (2) incorporating the terms of the settlement agreement into the order.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994); *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 299 (4th Cir. 2000) (finding that "if the Settlement Agreement is approved and incorporated into an order of the court, a breach of the agreement is a violation of the order, and the district court possesses jurisdiction to enforce the agreement.").

The Final Order states that this Court specifically retained jurisdiction to "administer, supervise, construe, and enforce" the terms of the Settlement Agreement.  (ECF No. 767 at 16). This Court has the authority to enforce the injunction against the *Williams* Plaintiffs as the Final Order permanently enjoined all Class Members who did not opt out of the Settlement Agreement from "asserting royalty claims against any party released under the subject Settlement Agreement," and provided that the Settlement Agreement was "the exclusive remedy for participating Class Members (and any successors-in-interest) with respect to any and all royalty claims against the Released Parties released under the Settlement Agreement that were or could have been brought in this action."  (*Id.*).

This Court has met both requirements for retaining jurisdiction in this case by (1) expressly retaining jurisdiction in the Final Judgment Order, and (2) incorporating the terms of the Settlement Agreement into the Final Order.  (*See* ECF No. 767).  Accordingly, this Court has subject matter jurisdiction to enforce its injunction against the *Williams* Plaintiffs.

II.     **The Court Should Enjoin the *Williams* Plaintiffs from Continuing to Assert Their Released Gas Royalty Claims.**

"[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). "The central purpose of each of the various forms of class action is to establish a judgment that will bind not only the representative parties but also all nonparticipating members of the class certified by the court." 18A Wright, et al., *Federal Prac. & Proc.: Jurisdiction* § 4455, at 448 (2d ed. 2002). *See also Dorsey v. Smith*, 91 F.R.D. 261, 263 (D. Md. 1981) ("A judgment in a class action binds members of the class to the same extent as if they had been named parties.").

The All Writs Act empowers federal courts to enforce their prior orders, including those issued in class actions, and "issue all writs necessary or appropriate in aid of their respective jurisdictions . . . ." 28 U.S.C. § 1651. The purpose of the All Writs Act is to ensure that federal court orders not be disturbed. *See Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 236 (4th Cir. 2007) ("The jurisdiction that the federal court had when it entered its original judgment is enough to support its issuance of an injunction."); *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1015 (9th Cir. 1999) ("Federal courts are empowered by the All Writs Act, 28 U.S.C. § 1651, to enjoin state court proceedings that interfere with federal judgments.").

A federal district court is empowered by the All Writs Act to enjoin a state court action if it conflicts with a settlement approved by that district court. *Scardelletti v. Rinckwitz*, 68 F. App'x 472, 477 (4th Cir. 2003) (recognizing that "a district court may, consistent with the [All Writs] Act, enjoin parties before it from attempting to relitigate decided issues and to prevent collateral attack of its judgments"); *In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218, 222 (4th Cir. 2017) ("a judgment approving a class settlement 'can bar later claims based on the allegations underlying the claims in the settled class action.'") (quoting *In re Prudential Ins.*

*Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001)); *In re Graniteville Train Derailment*, No. CA 1:06-3597-MBS, 2012 WL 193524, at *3 (D.S.C. Jan. 21, 2012) (enjoining class member that failed to opt out of class action settlement from proceeding with state court action pursuant to All Writs Act and final order approving the class action settlement).

The *Williams* Plaintiffs' gas royalty claims in the Ritchie County Litigation violate a federal judgment, court order, and settlement agreement.  This Court already enjoined the Settlement Class from asserting any claims that were or could have been brought in this action.  (ECF No. 767 at 15-16).  The Court should enforce its injunction against the *Williams* Plaintiffs because they are Settlement Participants who received proper notice of the Settlement Agreement and are attempting to assert gas royalty claims in the Ritchie County Litigation that were settled, released, and enjoined by this Court.

A.      The *Williams* Plaintiffs Are Settlement Participants.

Subclass A of the Class certified by this Court includes all EQT natural gas lessors who held West Virginia flat-rate leases converted by operation of W. Va. Code § 22-6-8 and that received or were due to be paid royalties from EQT Production from December 8, 2008 onward.  (ECF No. 767 at 9).  The "Settlement Class" includes "the parties and class members who have not excluded themselves[.]"  (ECF No. 767).

The *Williams* Plaintiffs own a fractional interest in a single lease subject to the West Virginia flat-rate statute (W. Va. Code § 22-6-8), for which EQT had royalty obligations after December 2008, and did not opt out of the Class or the Settlement Agreement.  (Exs. 1, 2).  Thus, the *Williams* Plaintiffs are Settlement Participants bound by the injunction in this Court's Final Order.

B.    The *Williams* Plaintiffs Received Proper Notice of the Settlement Agreement.

Actual notice to each class member is not required.  Rather, Fed. R. Civ. P. 23(c) requires that the notice for the subject class action provide the best notice practicable under the circumstances.  *Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.") (citing *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (explaining that even in an opt-out class action, class notice standard is "best practicable," as opposed to "actually received"); *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380 n.6 (M.D. Ga. 2006) ("The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required."), *aff'd*, 493 F.3d 1276 (11th Cir. 2007); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) ("It is widely accepted that for the due process standard to be met it is not necessary that every class member receive actual notice…"), *aff'd* 107 F.3d 3 (2d Cir. 1996); *Trist v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 1, 2 (E.D. Pa. 1980) ("*Mullane* […] has never been interpreted to require the sort of actual notice demanded by the defendants[…]"); William B. Rubenstein et al., Newberg on Class Actions § 11:53 (4th ed. 2011) ("Thus, due process does not require actual notice, but rather a good faith effort to provide actual notice. Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties."); 7AA Charles Alan Wright et al., Federal Practice & Procedure § 1789.1 (3d ed. 2005) ("[A]s long as the notice scheme that is adopted meets [the constitutional standards], courts generally have ruled that an absent class member will be bound by any judgment that is entered, even though the absentee never actually received notice.")).

Moreover, notice by publication can satisfy due process requirements. *See In re Prudential Ins. Co. of America Sales Practices*, 177 F.R.D. 216, 232 (D.C. N.J. Dec. 1, 1997) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950)). "Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties." *Id*. "Similarly, Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." *Id*. at 231 (citing *Carlough v. Amchem Prod.*, 158 F.R.D. 314, 325 (E.D. Pa. Oct. 27, 1993) ("Receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution.  . . . The fact that notice to some class members must be given by publication is not necessarily fata.  In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable.")).

The *Williams* Plaintiffs contend that they did not receive actual notice of the *Hamric* class action or Settlement Agreement and did not have the opportunity to opt out of the Settlement. But the notice standard has not changed since this Court entered its Final Order and this Court has already determined that the *Williams* Plaintiffs received proper notice.  (*See* ECF No. 747 at 11 (the Notice Plan "satisfies the requirements for notice and that the notice and plan represent the best notice practicable under the circumstances.")).

Prior to entering the Final Order, the *Hamric* Plaintiffs notified this Court that 1,141 Class Members were not mailed actual notices. (ECF No. 756-2).  The Notice Plan provided alternative methods of notices and repeat attempts to provide actual mailed notices to each Class Participant.  Accordingly, this Court subsequently found that "the Notice Plan, as approved by this Court for purposes of providing the reasonably best notice practicable, has been completed

and meets all requirements of F.R.C.P. 23(c)(2)(B) and 23(e)(1)."  (ECF No. 767 at 9).  Notably, the Court did not exclude the 1,141 individuals who were not mailed actual notices from the Settlement Class.  (*See id.*).  Receipt of an actual notice in the mail by each Class Participant was not required by this Court's Notice Plan, was not a prerequisite to a Class Participant's inclusion in the Settlement Class, and was not required by the black-letter law governing due process and Rule 23 notice requirements.

C.     The *Williams* Plaintiffs Are Asserting Released Gas Royalty Claims in the Ritchie County Litigation.

While reaping the financial benefits of the Settlement Agreement (*i.e.*, gas royalty payments without deductions, calculated pursuant to the agreed methodology), the *Williams* Plaintiffs violated the plain release language in the Settlement Agreement and the injunction in the Final Order by asserting released gas royalty claims in the Ritchie County Litigation.  The Settlement Agreement settled and released all claims against EQT for alleged breach of lease agreement, including (a) improper royalty payments and/or improper deductions; (b) improper volume; (c) improper measurement, improper sales prices, and (d) breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, *et seq.*), violation of the flat rate royalty statute (W. Va. Code § 22-6-8) and punitive damages.  (ECF No. 745 at 16).

On July 16, 2020, the *Williams* Plaintiffs filed the Ritchie County Litigation against several EQT Defendants, asserting substantively identical claims to those that were settled and released in this action:

| *Williams* Gas Royalty Claims | *Hamric* Gas Royalty Claims |
|---|---|
| **Failure to Properly Account for Royalties** ||
| Defendants sent statements and/or accountings which omitted, concealed, and/or misrepresented material facts relevant to the marketing and sale of Plaintiffs' oil and gas.<br><br>(Ex. 1 at ¶¶ 65-67). | Defendants breached their fiduciary and contractual duty to provide an accurate accounting and "concealed, suppressed, and omitted material facts […] in connection with the bases for charging plaintiffs for specific services for marketing, transporting and processing and for other service charges associated with the calculation of plaintiffs' royalties and deductions therefrom."<br><br>(ECF No. 29 at ¶¶ 44-47; ECF No. 745 at ¶ 57). |
| **Breach of Contract** ||
| Defendants breached their lease by "deducting post-production costs, severance taxes, and other deductions[;]" "failure to calculate royalty on the fair market value and sales price received for Plaintiffs' gas, oil, and other hydrocarbons[;]" and for taking "volumetric deductions[.]"<br><br>(Ex. 1 at ¶¶ 56, 58, 69). | Defendants breached their leases by reducing "plaintiffs' royalty on volume and/or price and/or deductions[;]" failing to pay royalties on the "market or fair value or at the amount for which they sold the gas[;]" and deducting severance taxes.<br><br>(ECF No. 29 at ¶¶ 33, 36, 55; ECF No. 745 at ¶ 57). |
| **Statutory Violation - WV Code § 22-6-8** ||
| Defendants violated W. Va. Code 22-6-8 "by not paying royalty required of EQT Defendants pursuant to said statute."<br><br>(Ex. 1 at ¶ 74). | Defendants violated W. Va. Code 22-6-8 by failing "to pay to plaintiffs the true and correct royalty due them[.]"<br><br>(ECF No. 29 at ¶ 43; ECF No. 745 at ¶ 57). |
| **Conversion** ||
| Defendants have improperly withheld "a portion of royalties belonging to the Plaintiffs[.]"<br><br>(Ex. 1 at ¶ 79). | Defendants improperly reduced "plaintiffs' royalty on volume and/or price and/or deductions[;]" failed to pay royalties on the "market or fair value or at the amount for which they sold the gas[;]" and deducted severance taxes.<br><br>(ECF No. 29 at ¶¶ 33, 36, 55; ECF No. 745 at ¶ 57). |

| Unconscionability and Breach of Duty of Fair Dealing | |
|---|---|
| Defendants acted unconscionably and breached their duty of fair dealing by "refusing to pay the royalties due to the Plaintiffs from the sale of oil, natural gas and related products[.]" <br><br> (Ex. 1 at ¶ 84). | Defendants breached the contractual duty of good faith and fair dealing by failing "to pay to plaintiffs the true and correct royalty due them[.]" <br><br> (ECF No. 29 at ¶ 43; ECF No. 745 at ¶ 57). |
| **Violation of West Virginia Consumer Credit and Protection Act** | |
| Defendants violated the WVCCPA by sending false royalty statements and taking deductions from their royalties. <br><br> (Ex. 1 at ¶¶ 89-90). | Defendants settled claims for "violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, et seq.). <br><br> (ECF No. 745 at ¶ 57). |

As set forth above, the *Williams* Plaintiffs assert the same royalty claims and seek the same relief as the claims settled and released in the Settlement Agreement and "**BARRED AND ENJOINED**" by this Court's Final Order.

## III.    The Anti-Injunction Act Does Not Limit This Court's Authority.

The Anti-Injunction Act does not limit the Court's authority to issue an order enjoining the *Williams* Plaintiffs in their state court case because two exceptions to the limitations of the Anti-Injunction Act apply:  (1) injunctions necessary in aid of a court's jurisdiction; and (2) injunctions to protect or effectuate judgments, also known as the "re-litigation" exception.  *In re MI Windows & Doors*, 860 F.3d at 224; *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.*, 315 F.3d 417, 440 (4th Cir. 2003); *Atl. Coast Line R.R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

As to the first exception, an injunction is necessary in aid of a court's jurisdiction where "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line*, 398 U.S. at 287.  With respect to

the second exception, the "relitigation" exception, it "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court" and "is founded in the well-recognized concepts of res judicata and collateral estoppel." *In re Am. Honda Motor Co.*, 315 F.3d at 440; *Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734, 737 (4th Cir. 1990) (relitigation exception permits a court "to enjoin state court proceedings in order to protect the res judicata effects of federal judgments").

Both exceptions apply here.  The *Williams* Plaintiffs seek to obtain a judgment against Defendants that directly conflicts with this Court's prior order, thus interfering with this Court's disposition of a case.  *See Atl. Coast Line*, 398 U.S. at 287.  Moreover, the issues raised by the *Williams* Plaintiffs have already been litigated in this action and enforcement of the injunction is necessary to prevent the relitigation of claims.  *See In re MI Windows & Doors*, 860 F.3d at 225; *In re Am. Honda Motor Co.*, 315 F.3d at 440.  As such, the Anti-Injunction Act does not preclude enforcement to enjoin the *Williams* Plaintiffs from proceeding with their gas royalty claims against EQT.

## **CONCLUSION**

The gas royalty claims asserted by the *Williams* Plaintiffs in the Ritchie County Litigation were litigated, settled, and released in this case.  The *Williams* Plaintiffs' disregard of the injunction in the Final Order contravenes this Court's authority and denies Defendants the benefit of the Settlement Agreement—that is, the full and final release of royalty claims that Defendants paid more than fifty million dollars to settle on a class-wide basis.  For the reasons set forth herein, Defendants respectfully request that the Court enforce its Final Order and prohibit the *Williams* Plaintiffs from proceeding with any and all gas royalty claims in the Ritchie County Litigation.

Respectfully submitted,

By: /s/ *Jennifer J. Hicks*

Jennifer J. Hicks (#11423)
**BABST, CALLAND, CLEMENTS &
ZOMNIR, P.C.**
300 Summers Street Suite 1000
Charleston WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com

Mark K. Dausch (#11655)
**BABST, CALLAND, CLEMENTS &
ZOMNIR, P.C.**
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5655
mdausch@babstcalland.com

***Counsel for Defendants***

Lauren W. Varnado (*pro hac vice* pending)
**MCKOOL SMITH, P.C.**
600 Travis Street Suite 7000
Houston, TX 77008
(713) 485-7311
(713) 485-7344 (fax)
lvarnado@mckoolsmith.com

David R. Dehoney (*pro hac vice* pending)
**MCKOOL SMITH, P.C.**
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
(212) 402-9400
(212) 402-9444
ddehoney@mckoolsmith.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

**THE KAY COMPANY, LLC**
**et al.,**

      **Plaintiffs,**

**v.**                         **CIVIL ACTION NO. 1:13-CV-151**
                                                  **(Honorable John Preston Bailey)**

**EQT PRODUCTION COMPANY, et al.,**

      **Defendants.**

### CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2021, I electronically filed **"DEFENDANTS' MOTION TO ENFORCE THE FINAL JUDGMENT ORDER AND FINAL ORDER"** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Marvin W. Masters, Esq.
The Masters Law Firm, LC
181 Summers Street
Charleston, WV 25301

John Kevin West
Steptoe & Johnson PLLC
Huntington Center, Suite 2200
41 South High Street
Columbus, OH  43215

Thomas W. Pettit, Esq.
Thomas W. Pettit, L.C.
P.O. Box 189
Barboursville, WV 25504

David K. Hendrickson
Carl L. Fletcher
Hendrickson & Long, PLLC
214 Capitol Street
P.O. Box 11070
Charleston, WV 25339

Michael W. Carey, Esq.
Robert E. Douglas, Esq.
Carey, Scott, Douglas & Kessler PLLC
707 Virginia Street, East
Suite 901
Charleston, WV 25301

Scott S. Segal, Esq.
The Segal Law Firm
810 Kanawha Boulevard, East
Charleston, WV 25301

Mark R. Staun, Esq.          David J. Romano, Esq.
Hartley & O'Brien            363 Washington Ave.
2001 Main Street             Clarksburg, WV 26301
Suite 600
Wheeling, WV 26003

I hereby certify that I have mailed the document via the United States Postal Service to the following counsel for the plaintiffs in the Ritchie County Litigation.

Scott A. Windom
Rodney C. Windom
Windom Law Offices, PLLC
101 East Main Street
Harrisville, WV 26362

                    */s/ Jennifer J. Hicks*
                    Jennifer J. Hicks