IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg

**THE KAY COMPANY, LLC, WILLIAM CATHER,**
Trustee of Diana Goff Cather Trusts, and **JAMES
E. HAMRIC, III,** and all other persons and entities
similarly situated,

           Plaintiffs,

      v.                                                          **CIVIL ACTION NO. 1:13-CV-151**
                                                  Judge Bailey

**EQT PRODUCTION COMPANY,** a Pennsylvania
corporation, **EQT Corporation**, a Pennsylvania
corporation, **EQT ENERGY, LLC,** a Delaware
limited liability company, **EQT INVESTMENTS
HOLDINGS, LLC,** a Delaware limited liability
company, **EQT GATHERING, LLC,** a Delaware
limited liability company, **EQT MIDSTREAM
PARTNERS, LP,** a Delaware limited partnership,
**JOHN FOUT,** and **MAHLON F. HARRIS,**

           Defendants.

## <u>ORDER</u>

Presently pending before this Court are Defendants' Motion and Memorandum of

Law in Support of Motion to Enforce the Final Judgment Order and Final Order [Doc. 800],

Defendants' Motion to Strike "Exhibit 1" to Class Counsel's Response to Defendants'

Motion to Enforce the Final Judgment Order and Final Order [Doc. 814], and Defendants'

Motion to Strike "Exhibit 1" to Class Counsel's Response to Defendants' Motion to Enforce

the Final Judgment Order and Final Order [Doc. 815].  The pending Motions are now ripe

for decision.  For the following reasons, this Court will grant Defendants' Motion to Enforce

the Final Judgment Order and Final Order and deny as moot Defendants' Motions to Strike.

## I.      Background

### A.      The Class Action

This case began in 2013 when this case was removed from Doddridge County Circuit Court.  *See* [Doc. 1].  The Kay Company, LLC; H. Dotson Cather, Trustee of Diana Goff Cather Trusts; and James E. Hamric, III  (the "*Hamric* Plaintiffs") filed a Complaint against EQT, on behalf of themselves and all other persons similarly situated.  The *Hamric* Plaintiffs sought damages for alleged breach of lease agreements, breach of fiduciary duty, fraud, violations of the flat rate royalty statute, violations of the West Virginia Consumer Credit and Protection Act, and for punitive damages.  *See* [Doc. 1-1].

On September 30, 2016, the *Hamric* Plaintiffs filed a Motion to Certify Class [Doc. 299], which defendants opposed [Doc. 311].  This Court certified the class on September 6, 2017, defining the class as follows:

> All EQT natural gas lessors that received or were due to be paid royalties
>
> from defendants and EQT's production or sale of natural gas which was
>
> produced within the boundaries of the State of West Virginia from their
>
> natural gas or mineral estates during the period beginning after December
>
> 8, 2008, and extending to the present (during any time within their leasehold
>
> period.).

[Doc. 400 at 37].  This Court also laid out three Subclasses.  The *Williams* Plaintiffs are members of "Subclass A," which is defined as follows:

Subclass A - All EQT natural gas lessors with flat rate leases converted by

operation of W. Va. Code, § 22-6-8 and that received or were due to be paid

royalties from defendants and EQT's production or sale of natural gas which

was produced within the boundaries of the State of West Virginia from their

estates during the period beginning after December 8, 2008, and extending

to the present (during any time within their leasehold period.).

[Id.].

This Court granted preliminary approval of a class settlement on February 13, 2019.

*See* [Doc. 747].  The Settlement Agreement [Doc. 745] is the "exclusive remedy for all

claims resolved in this litigation for Class Members who are Class Participants for claims

for compensatory damages, declaratory and injunctive relief, punitive damages, and any

other damages arising out of the Royalty Claims[,]" and is the "exclusive remedy for any

and all Royalty Claims, resolved in this litigation, of Class Members who are not Opt-Out

Class Members as set forth herein against EQT and any and all other Released Parties."

*See* [Doc. 745 at 44].

In exchange for defendants' agreement to pay more than $50 million dollars to the

class and make future royalty payments based on an agreed-to methodolgy, Settlement

Participants released all claims asserted by the *Hamric* Plaintiffs based on defendants'

alleged failure to pay proper gas royalties.  The "Royalty Claims" include claims for: (a)

improper royalty payments and/or improper deductions; (b) improper volume; (c) improper

measurement, improper sales prices; and (d) breach of fiduciary duty, fraud, violation of

the West Virginia Consumer Credit and Protection Act, violation of the flat rate royalty

statute, and punitive damages related to the above claims or set forth in the record of this case, all based upon the alleged failure to pay proper royalty. *See* [Id. at 16].

The *Hamric* Plaintiffs and Settlement Participants must "forbear from asserting any new claims for issues litigated and settled in this case, including but not limited to, claims related to deductions, pricing, volumes, severance tax deductions, breach of fiduciary duty, fraud, W.Va. Code Ann. 46A-6-101, *et seq.*, punitive damages, attorneys' fees [. . .] and prejudgment interest. . . ." [Id. at 19–20].

A Final Order was entered on July 22, 2019, approving the Class Action Settlement. *See* [Doc. 767].  The Final Order provided the following holding:

> It is further **ORDERED** that all participating Class Members shall be and are hereby **BARRED AND ENJOINED** from asserting royalty claims against any party released under the subject Settlement Agreement, except that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) shall not be **BARRED AND ENJOINED**.
>
> It is further **ORDERED** that the participating class members' claims are **RELEASED** through the dates provided for under the terms of the Settlement Agreement, and that the claims of Class Members who opted out of the certified classes prior to the settlement or who opted out under the terms of the Preliminary Approval Order (Doc. Id. 747) the opt-out Class Members' claims shall not be released.

It is further **ORDERED** that the subject Settlement Agreement provided the exclusive remedy for participating Class Members (and any successors-in-interest) with respect to any and all royalty claims against the Parties released under the Settlement Agreement that were or could have been brought in this action.

It is further **ORDERED** that there is no just reason for delay, and the Court hereby expressly DIRECTS the entry of a FINAL JUDGMENT as to the claims of participating Class Members under F.R.Civ.P.54(b).

[Doc. 767 at 15–16]. This Court also included a reservation of jurisdiction to enforce and administer the Settlement Agreement and permanent injunction:

The Court further ORDERS that the Court shall reserve continuing and exclusive jurisdiction over the parties and the participating Class Members to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties and the Class Members.

[Id. at 16].

This Court also approved a Notice Plan to provide class members with notice of the pending class action litigation by mail or publication. *See* [Doc. 475]. Then again on February 13, 2019, this Court approved the same Notice Plan to provide class members with notice of the Settlement Agreement. *See* [Doc. 747]. After determining that the Notice Plan was proper, this Court found that the Class Administrator properly implemented the Notice Plan. *See* [Doc. 767]. The *Hamric* Plaintiffs stated that "the

Notice Plan, as approved by this Court for purposes of providing the reasonably best notice practicable, has been completed and meets all requirements of F.R.C.P. 23(c)(2)(B) and 23(e)(1)." [Doc. 757 at 2]. The *Hamric* Plaintiffs also stated that most class members and their addresses are known but due to heirship issues with lessors who have died and left heirs over the years, some addresses are not known or cannot be found. [Id. at 5].

This Court approved notice by publication for 1,141 Class Members who were not mailed notices, and on July 22, 2019, found that the Notice Plan provided the reasonably best notice practicable. *See* [Doc. 767 at 9].

## B. Ritchie County Litigation

The *Williams* Plaintiffs, who are members of Subclass A of the *Hamric* class, filed a lawsuit in the Circuit Court of Ritchie County, West Virginia, against EQT. In that case, the *Williams* Plaintiffs, among other things, assert claims for damages for alleged underpayment of gas royalties. *See* [Doc. 800-1]. According to the *Williams* Plaintiffs, they should be excluded from the Final Order of this Court because they claim they did not receive actual notice of the settlement.

## II. The Motion to Enforce Final Judgment

Defendants now file their Motion to Enforce Final Judgment Order and Final Order, alleging that the *Williams* Plaintiffs[1] are in violation of the Final Order which was adopted by this Court. Specifically, defendants allege that the *Williams* Plaintiffs are violating the Final Order by continuing to benefit from the settlement as Settlement Participants in the above-styled case and also filing suit against several of the defendants in Ritchie County,

---

[1] The *Williams* Plaintiffs in the Ritchie County Litigation are Philip K. Williams, Timothy A. Williams, Diana L. Weiss, and Mahlon F. Harris.

West Virginia, "asserting claims for damages for alleged underpayment of gas royalties–the exact claims that were released by the Settlement Agreement and barred by this Court's Final Order." *See* [Doc. 800 at 2]. A Response was filed on August 26, 2021. *See* [Doc. 810]. On September 3, 2021, a Reply was filed. *See* [Doc. 816].

## A. Relevant Law

Federal courts are courts of limited jurisdiction whose power is derived from the Constitution and statute, and that power cannot be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, a district court may not enforce a Settlement Agreement unless "the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction." *Fairfax Countywide Citizens Ass'n v. Fairfax Cnty.*, 571 F.2d 1299, 1303 (4th Cir. 1978). However, if the Settlement Agreement is approved and incorporated into an order of the court, a breach of the agreement is a violation of the order, and the district court possesses jurisdiction to enforce the agreement. *Kokkonen*, 511 U.S. at 381; *Fairfax*, 571 F.2d at 1308 n.8. *See also* *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291 (4th Cir. 2000).

The Final Order in this case specifically noted that "the Court shall reserve continuing and exclusive jurisdiction over the parties and the participating Class Members to *administer, supervise, construe,* and *enforce* the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties and the Class Members." *See* [Doc. 767

at 16].   Under **Kokkonen** and **Fairfax**, this Court finds the above quoted language is sufficient to grant this Court jurisdiction to enforce the Final Order.

The All Writs Act, 28 U.S.C. § 1654, empowers a federal court to enjoin proceedings that interfere with federal judgments.   This includes the power to enjoin state court proceedings, but only when an exception to the Anti-Injunction Act, 28 U.S.C. § 2283, applies.   The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment."   28 U.S.C. § 2283.   These three exceptions "are narrow and are 'not [to] be enlarged by loose statutory construction.'" **Chick Kam Choo v. Exxon Corp.**, 486 U.S. 140, 146 (1988) (quoting **Atlantic Coast Line R. Co. v. Locomotive Engineers**, 398 U.S. 281, 287 (1970)).   "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." **Atlantic Coast Line R. Co.**, 398 U.S. at 297; accord **Smith v. Bayer Corp.**, 564 U.S. 299, 306 (2011).   Even where one of the exceptions to the Anti-Injunction Act applies, "[t]he power to enjoin state proceedings is discretionary, allowing the court to weigh those factors both pro and con to the issuance" of an injunction. **Commonwealth Edison Co. v. Gulf Oil Corp.**, 541 F.d 1263, 1274 (7th Cir. 1976).

## B.    Discussion

This Court finds that the *Williams* Plaintiffs' gas royalty claims in the Ritchie County Litigation are precluded by a federal judgment, this Court's Order, and the Settlement Agreement.   The *Williams* Plaintiffs are Settlement Participants who are deemed to have

8

received proper notice of the Settlement Agreement and are attempting to assert gas royalty claims in the Ritchie County Litigation that were already settled, released, and enjoined by this Court.

Subclass A of the Class is "[a]ll EQT natural gas lessors with flat rate leases converted by operation of W. Va. Code § 22-6-8 and that received or were due to be paid royalties from defendants and EQT's production or sale of natural gas . . . produced . . . during the period beginning after December 8, 2008, and extending to the present. . . ." [Doc. 767]. Here, the *Williams* Plaintiffs own a fractional interest in a single lease subject to the W. Va. Code § 22-6-8 for which EQT had royalty obligations after December 8, 2008. The *Williams* Plaintiffs also did not opt out of the Class or the Settlement Agreement. Therefore, the *Williams* Plaintiffs are Settlement Participants bound by this Court's Final Order.

The *Williams* Plaintiffs also received sufficient and proper notice of the Settlement Agreement. "Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). *See also* **Silber v. Mabon**, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (explaining that even in an opt-out class action, class notice standard is "best practicable," as opposed to "actually received"); **Adams v. S. Farm Bureau Life Ins. Co.**, 417 F.Supp.2d 1373, 1380 n.6 (M.D. Ga. 2006) ("The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required."), *aff'd* 493 F.3d 1276 (11th Cir. 2007); **In re Prudential Sec. Inc. Ltd. P'ships Litig.**, 164 F.R.D. 362, 368 (S.D. N.Y. 1996) ("It is

widely accepted that for the due process standard to be met it is not necessary that every class member receive actual notice. . . .", *aff'd* 107 F.3d 3 (2d Cir. 1996); 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:53 (4th ed. 2011) ("Thus, due process does not require actual notice, but rather a good faith effort to provide actual notice. Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties."); 7AA Charles Alan Wright et al., *Federal Practice & Procedure* § 1789.1 (3d ed. 2005) ("[A]s long as the notice scheme that is adopted meets [the constitutional standards], courts generally have ruled that an absent class member will be bound by any judgment that is entered, even though the absentee never actually received notice.").

Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate. *See **In re Agent Orange Prod. Liab. Litig.***, 818 F.2d 145, 168–69 (2d Cir. 1987) (finding that, with respect to a 23(b)(3) class, unidentified absent class members that could not be located through reasonable efforts did not need to be provided with individual, mailed notice in order to be bound).

The *Williams* Plaintiffs argue that they did not receive notice of the *Hamric* Class Action or Settlement Agreement. *See* [Doc. 810-1 at 6]. However, under the above cited cases, the *Williams* Plaintiffs are not required to actually receive notice. Due Process only requires that notice be reasonably calculated to reach the class, not that it actually succeeds in reaching every individual class member. *See **Peters v. Nat'l R.R. Passenger***

*Corp.*, 966 F.2d 1483 (D.C. Cir. 1992).  This Court has already analyzed the Notice Plan and even though not all individual class members would receive notice, the Notice Plan was reasonably calculated to reach the class.

Thus, this Court will **GRANT** Defendants' Motion and Memorandum of Law in Support of Motion to Enforce the Final Judgment Order and Final Order [Doc. 800].  Thus, the *Williams* Plaintiffs are **PRECLUDED** from pursuing their gas royalty claims in the Ritchie County Litigation.  However, both parties agree that there are claims in the Ritchie County Litigation that are different from those settled in the above-styled case.  Those claims for the underpayment of natural gas liquids are not enjoined and the *Williams* Plaintiffs can continue to prosecute those claims in the Ritchie County Litigation.

Moreover, Defendants' Motion to Strike "Exhibit 1" to Class Counsel's Response to Defendants' Motion to Enforce the Final Judgment Order and Final Order [**Doc. 814**] and Defendants' Motion to Strike "Exhibit 1" to Class Counsel's Response to Defendants' Motion to Enforce the Final Judgment Order and Final Order [**Doc. 815**] are hereby **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 14, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE